WHITCOMB *v.* HORMAN ET AL.

[No. 455, September Term, 1965.]

434

*Decided November 16, 1966.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*George T. Tyler,* with whom were *J. Nicholas Shriver, Jr.,* and *John G. Rouse, Jr.,* on the brief, for the appellant.

*Dimitri P. Mallios,* with whom were *Joseph L. Nellis* and *Philipson, Lyon & Chase* on the brief, for the appellees.

BARNES, J., delivered the opinion of the Court.

The appellant, Martin F. Whitcomb (Whitcomb), as plaintiff below, filed an action at law originally in the Circuit Court for Montgomery County on August 30, 1963, against the appellees, Frederick L. Horman (Horman) and Horman Associates, Inc., a Delaware corporation (the corporation), as defendants below. The declaration alleged two common counts in assumpsit for work and labor done and for money due on an account stated between the parties. It also set forth a special count reciting Whitcomb's employment by Horman in April, 1952, and later by the corporation in 1957. Whitcomb sought to recover for the value of accumulated vacations, for earned and unpaid salary, for an interest in a profit sharing trust agreement and for breach of a contract by which Whitcomb was to receive a portion of the stock of the corporation. Horman and the corporation on October 1, 1963, filed an "answer" alleging that they were not indebted as alleged and did not promise as alleged and as "affirmative defenses" that Whitcomb's claim was "in whole or in part barred by the statute of limitations," was "eliminated by an accord and satisfaction" and that Whitcomb "is guilty of laches."

After the taking of depositions, the defendants filed a motion for summary judgment on February 7, 1964, on the ground that "from the record (the depositions of Whitcomb and his wife taken October 30, 1963 and January 9, 1964 were filed in the case) there is no genuine issue of a material fact in dispute and the defendants and each of them are entitled to judgment as a matter of law."

Thereafter, on March 20, 1965, Whitcomb filed a suggestion and affidavit of removal. On March 30, 1965, Horman and the corporation filed a motion to tax costs and fees to the plaintiff Whitcomb on the alleged ground that the case had been set for trial on March 3, 1965, and it was discovered on the afternoon of March 2, that the case had been removed unilaterally by the plaintiff's counsel from the trial calendar. It was alleged that counsel for the defendants had no notice whatever of the cancellation of the trial, that they had expended much time and effort in preparing for trial, made trips to Baltimore and elsewhere for such preparation, extending 14 hours in so doing and expending $300 in costs for preparation for trial without no-

tice of the cancellation. It was prayed that the Circuit Court for Montgomery County pass an order taxing fees and costs of $1100 against the plaintiff prior to removal. After hearing, that court (Anderson, J.) passed an order, apparently on April 9, 1965,[1] requiring the plaintiff to pay the defendants $300 for "costs." Later on April 12, 1965, Judge Anderson ordered the case removed to the Circuit Court for Prince George's County for trial, and the record was transmitted to that court.

On July 29, 1965, Whitcomb filed in the Circuit Court for Prince George's County an affidavit in opposition to the motion of Horman and the corporation for summary judgment. The motion for summary judgment was argued before Judges Bowen and Mathias on July 30, 1965, and was taken *sub curia*. On August 10, 1965, the motion for summary judgment was granted, the order granting the motion reciting that the lower court "after hearing arguments of counsel and after carefully reading the entire file is of the opinion that the motion should be granted." Judgment was entered for the defendants for costs the same day. Unfortunately, counsel for neither party filed a motion under Maryland Rules 18 c and 564 b 2 to require the lower court to dictate a brief statement of its grounds for its decision nor did the lower court do this *sua sponte* as we recently indicated would be appropriate in *Reeves v. Howar,* 244 Md. 83, 222 A. 2d 697 (1966).

The appeal to this Court was timely taken from the order

---

1. The order granting the motion to tax fees and costs to the extent of the $300 for costs is not dated. The docket entries, however, state the following. "April 9, 1965—Hearing on Defendant's motion to tax costs before Judge Anderson and the court will allow $300.00 as costs." While the action of the court is expressed in the future rather than the present tense, we will assume that the order was actually signed and entered on April 9, 1965, although curiously, the date of filing is not stamped on the order by the Clerk. It was obviously filed prior to April 13, 1965 when the order of April 12, 1965 removing the case to the Circuit Court for Prince George's County was filed as the undated order is bound in the record before the order of April 12. In any event no judgment was entered in favor of the defendants against the plaintiff in the amount of $300 so that the order is interlocutory in nature and is properly before us upon the appeal from the final judgment. See Rocks v. Brosius, 241 Md. 612, 217 A. 2d 531 (1966).

of August 10, 1965, granting the motion for summary judgment and entering judgment for the defendants for costs. Whitcomb also appeals from the order of the Circuit Court for Montgomery County of April 9, 1965, allowing $300 as "costs" against him.

Two questions are presented to us for decision: (1) was the lower court in error in granting the motion for summary judgment, and (2) was the Circuit Court for Montgomery County in error in passing the order of April 9, 1965, requiring Whitcomb to pay the defendants $300. We have concluded that both of these questions should be answered in the affirmative and the order and judgment of August 10, 1965, and the order of April 9, 1965, must both be reversed.

### (1)

Maryland Rule 610 d provides for the granting of a summary judgment "if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Recently in the case of *Reeves v. Howar, supra,* in construing Rule 610 we stated:

> "* * * .[I]n a summary judgment proceeding even where the underlying facts are undisputed, if those facts are *susceptible* of more than one inference, the party against whom the inference was sought to be drawn is entitled to the inference most favorable to such party's contentions."

See also *Mayor and City Council of Baltimore v. Allied Contractors,* 236 Md. 534, 544, 204 A. 2d 546, 551 (1964) and *Roland v. Lloyd E. Mitchell, Inc.,* 221 Md. 11, 14, 155 A. 2d 691, 693 (1959).

Our review of the record and giving the plaintiff Whitcomb all inferences from the depositions and from his affidavit filed in opposition to the motion for summary judgment, we find that there are several material facts in dispute.

### (a)

The defendants Horman and the corporation contend that there was an accord and satisfaction reached between the par-

ties. The depositions indicate that the corporation sent Whitcomb a check payable to his order (the amount of the check is not stated but in the brief of Horman and the corporation it is stated that the amount was $1318.69), on the back of which was a provision that the endorsement of the check would operate as a "release" of Whitcomb's claims. Whitcomb, however, struck out the "release," endorsed the check for deposit only and deposited it in his account. On instructions of the defendants, the bank on which the check was drawn declined to pay it so that Whitcomb never received the money. To have an accord and satisfaction not only must the offer of money be made in full satisfaction of the creditor's claim, but must also be accompanied by such acts or declarations as will amount to a condition that if the money is accepted it is to be in full satisfaction and the creditor understands that this will be the effect of his acceptance of the money. *Mercantile Trust and Deposit Co. v. Rode,* 137 Md. 362, 377, 112 Atl. 574, 580 (1921). Whitcomb's acts are inconsistent with an accord and satisfaction. In addition to this both Whitcomb and his wife deny in their depositions that any agreement of settlement or accord and satisfaction was reached. It seems clear to us that there was a genuine dispute in regard to the alleged accord and satisfaction and, indeed, even if it were ultimately found to have existed Whitcomb would at least be entitled to judgment for the amount of the check which admittedly he has never received.[2]

### (b)

There also is a genuine dispute about the value of accumulated vacations. Horman admitted in his deposition that the usual and expected vacation with pay of Whitcomb was for two weeks each year and that Whitcomb had not taken or received that much vacation in each year. Whitcomb contends that he is to be paid for the accumulated vacations. This issue will

---

2. As the defendants did not deposit the amount of the check, which they apparently concede to be due the plaintiff, into court pursuant to Maryland Rule 325, the plaintiff, upon entry of judgment for the amount due, would be entitled to the costs. See Maryland Rule 604 a.

have to be resolved at the trial and the amount due, if any, determined.

(c)

Whitcomb, who was a field engineer selling electronic equipment as a representative for manufacturers, testified in his deposition that at a meeting on July 5, 1960, Horman (as president and on behalf of the corporation) had promised him that if Whitcomb would stay on in his employment for the months of July and August, 1960, after Whitcomb had advised Horman in June, 1960, that he was leaving the corporation's employment in order that the remaining field engineers could have their vacations and attend training seminars conducted on the west coast by a leading manufacturer, Whitcomb would receive his regular salary and in addition to this, an amount which he would normally receive as salary for a six-month period. Mrs. Whitcomb, who was present at the July 5 meeting, corroborated this. The annual salary consisted of a "draw" of $10,000 and a bonus calculated on the basis of profits from sales which averaged $10,000 a year and was paid twice a year, so that Whitcomb received total compensation of approximately $20,000 a year. Horman does not deny the substance of the Whitcomb testimony but testified that he only promised Whitcomb $10,000 in addition to his regular "draw," which he considered to be a "severance payment," but there is nothing in the record to show that Horman's thought in this regard was ever communicated to Whitcomb. Whitcomb testified that the check sent to him by the corporation "did not include the bonus portion of the pay for those last two months" so that there is a genuine dispute concerning the amount due, if any, to Whitcomb for this item.

(d)

Whitcomb claims a possible interest in a profit sharing trust agreement. Whitcomb received a letter from the corporation dated May 13, 1960 concerning this agreement and a copy of one letter was attached to his affidavit in opposition to the motion for summary judgment. The letter stated that "service will be based on the date of employment by Mr. Horman and not on the date of any of the corporations." The letter also stated that "Payment of the fund will be made after retirement or on leav-

ing our employ after at least five years service." Whitcomb was employed by Horman in 1953. The corporation was incorporated in 1955 (or possibly 1957). The trust agreement in the possession of the corporation was not offered in evidence so that it is not possible to determine from the record whether or not Whitcomb is entitled to some benefit under it as is suggested, prima facie, by the letter of May 13, 1960, which was sent and received by Whitcomb more than a month prior to his advising Horman of his intention to leave the corporation's employment. At the trial, Whitcomb's rights, if any, under the trust agreement can be determined.

### (e)

Finally, Whitcomb testified in regard to certain promises and representations made by Horman to him that Horman would see to it that Whitcomb received a share in the business. Horman was the sole proprietor of the business from 1953 until incorporation and after incorporation was president of the corporation. He also owned 80 per cent of the corporate stock, his wife and children owning the remaining 20 per cent of the stock. Admittedly Whitcomb's testimony in his depositions is vague in regard to the terms of this alleged agreement, but he explained that he did not have his memoranda and papers with him and had difficulty in remembering the exact details of the alleged agreement. Our predecessors have indicated that courts are reluctant to annul a contract on the grounds of uncertainty, especially of an employer's agreement to pay an employee a share of profits of the business in addition to his salary. *Vincent v. Palmer,* 179 Md. 365, 370-71, 19 A. 2d 183, 187 (1941). The nature, terms and rights, if any, of Whitcomb under the alleged agreement to give him a share of the business should be determined at the trial and not disposed of on a motion for summary judgment.

As the case at bar is an action at law, the applicable period of limitations is three years from the time the cause of action accrued. Code (1957) Article 57, Section 1. In an action at law, the defense of laches is not available. *Brashears v. Collison,* 207 Md. 339, 352, 115 A. 2d 289, 296 (1955).[3] *McHugh*

---

3. Counsel for the defendants apparently overlooked the fact that in Maryland the distinction between actions at law and suits

*v. Martin,* 198 Md. 173, 180, 81 A. 2d 623, 627 (1951). The contract of employment of Whitcomb ended on September 1, 1960, according to the testimony in the depositions. That employment had been a continuing one for the corporation since its incorporation. The three-year statute of limitations did not begin to operate until the cause of action became vested and enforceable, on and after September 1, 1960, not from the time of the making of the promise. *Vincent v. Palmer, supra,* 179 Md. at 374-75, 19 A. 2d at 189 (1941). The declaration in the case at bar was, therefore, filed within the three-year period, having been filed on August 30, 1963.

(2)

In considering the order of the Circuit Court for Montgomery County of April 9, 1965, requiring Whitcomb to pay $300, we note that there is no transcript of any proceedings or testimony upon which the lower court acted in passing the order other than the motion and the order itself. Counsel for Whitcomb has filed as an appendix to his brief a "Statement of Facts" in support of the appeal from this order, but counsel for Horman and the corporation have declined to agree upon a statement of facts on this issue. The "Statement of Facts" filed as an appendix states, in effect, that the assignment clerk for the Circuit Court for Montgomery County had set March 3, 1965, as the date for the trial of the case; that upon notification of Whitcomb of this date he advised counsel that his mother was ill in Germany and he might have to go out of the United States on short notice and requested counsel to have the trial postponed; that under the local practice only the Assignment Judge (Judge Anderson) had authority to take the case out of the trial assignment; that counsel for Whitcomb went to Judge Anderson's chambers, but the judge was not there and he then made an oral request and left a letter also requesting a postponement with the judge's secretary; that in a day or two the judge's secretary telephoned counsel for Whitcomb and advised his secretary that the judge had granted the requested

---

in equity is continued by the Maryland Rules. Pleas, not an answer are filed to a declaration in an action at law if no demurrer is filed. There is no "defense of laches" in a law action.

postponement and that no new date had been set for trial; and that no instructions were given Whitcomb's counsel to notify counsel for the defendants of the postponement. At the hearing on the motion to tax costs and fees—filed while the defendants' motion for summary judgment was pending—it developed that neither counsel nor the assignment clerk had notified counsel for the defendants of the postponement of trial. In our opinion, we should not consider this "Statement of Facts" as it is not a part of the record. See *Burke v. Burke,* 204 Md. 637, 646, 106 A. 2d 59, 64 (1954). Cf. *Hartley v. State,* 238 Md. 165, 168, 208 A. 2d 72, 73 (1965).

We are able, however, to dispose of the matter without considering the "Statement of Facts" filed as an appendix with the appellant's brief.

The applicable rule is Maryland Rule 527, entitled *"Continuance or Postponement."* Section a 1 provides:

> "The court may upon motion of any party, or of its own motion, continue an action from time to time in order that a trial may be had upon the merits or as the interests of justice may require;"

Section e provides:

> "Where a continuance or postponement is granted, the court shall make such order as to costs theretofore accrued as may be just."

Section e replaced former Article 75, §73 of the Code (1939) which provided:

> "In all cases where a continuance is granted the party applying for the same shall pay the costs of the term unless the court shall otherwise direct."

The intention of Section e was to broaden the power of the trial judge over the allocation of costs when he granted a continuance or postponement. It removed the mandatory requirement that the party applying for a continuance pay the costs of the term unless the court ordered otherwise and gave the trial court discretionary power to allocate the court costs in cases of both continuance and postponement when the court

granted the continuance or postponement. It was contemplated that this allocation of the accrued costs, or any part of them, be made when the court grants the continuance or postponement. There is no provision in the rule that counsel for the other side be notified of the court's action in granting or refusing a continuance or postponement, and there is no showing in the record that the action of the trial court in granting the postponement—if there was such action—was conditioned upon the giving of counsel for the defendants notice of the postponement. The primary obligation to ascertain the state of the trial docket is upon counsel for the respective parties although in practice counsel depend upon the assignment commissioner or assignment clerk to keep them advised. It is expected, of course, in the usual case, that counsel seeking a postponement will notify other counsel of the intention to request a postponement.

In the case at bar it is clear that the case should not have been assigned for trial in the first place, as the defendants had filed a motion for summary judgment which was then pending and unheard. It is apparent that there could be no trial on the merits until that motion was either withdrawn by the defendants or heard and overruled by the trial court. Counsel for the defendants, having filed the motion for summary judgment, were obviously quite aware of the situation. Since they had no intention of withdrawing the motion, did not withdraw it but, on the contrary, ultimately pressed it for hearing, they should not have "prepared for trial" until after the motion was disposed of by the trial court.

One of the beneficent purposes of the Summary Judgment Rule is to prevent the necessity and expense of preparing for trial on the merits when there is no genuine dispute of fact in the case and the moving party is entitled to judgment as a matter of law. We are of the opinion that under these circumstances it was erroneous for the trial court to allocate any costs of whatever character against Whitcomb. We do not reach the questions as to whether the word "costs" in Section e of Maryland Rule 527 embraces other than the usual court costs taxed in due course by the clerk or whether, assuming *arguendo,* that other types of "costs" are included, it would deny due process of law to assess such other types without a plenary hearing, with the taking of testimony, cross-examination and the usual

process of judicial determination. It might be added that the assessed court costs in the Circuit Court for Montgomery County prior to the removal were $35.75, there being an additional cost of $10 for the cost of the record to be transferred.

> *Order and judgment of August 10, 1965, and the order of April 9, 1965, reversed and the case remanded for trial on the merits, the appellees to pay the costs.*