603 A.2d 695

Donald D. SANDOVAL, John D. Lipson and individuals, J. Lindsay Parks, Indiana Hospital, a Pennsylvania Corporation, Confidential Peer Review Ltd., a Wisconsin Corporation and Michael Zeihen and John P. Schmidt, individuals, Appellants,

v.

Leonard E. MALIVER, Appellee.

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 1991.

Decided Feb. 7, 1992.

Reargument Denied April 2, 1992.

440

Larry A. Silverman, for appellants.

Jeffrey G. Brooks, for appellee.

Before CRAIG, President Judge, DOYLE, J. (P.), and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Indiana Hospital et al. (hereinafter collectively referred to as the Hospital), instituted a peer review of Dr. Leonard E. Maliver (Dr. Maliver), a staff physician, in April, 1989, allegedly without notice to Dr. Maliver, for reasons not herein relevant. Having received a report from appellant Confidential Peer Review Ltd., the peer review procedure was terminated in July, 1989.

By reason of the manner in which that peer review was initiated and conducted, Dr. Maliver, on February 6, 1990, instituted a civil action in trespass and assumpsit[1] at Civil Action No. 268 CD 1990 in the Court of Common Pleas of Indiana County against the Hospital.[2] The complaint numbered 33 pages and consisted of 115 paragraphs setting forth 8 counts.[3] The complaint was predicated upon the alleged sham peer review of Dr. Maliver and its resultant alleged injury to him, and it set forth that Dr. Maliver was seeking "substantial awards of compensatory and punitive damages." (R.R. 6a.)

Notwithstanding the termination of the peer review procedure begun in April, 1989 which constitutes the basis of Dr. Maliver's civil complaint (268 CD 1990), the Executive Committee of the Hospital, by letter dated November 9, 1989, informed Dr. Maliver that it would investigate certain incidents of Dr. Maliver's conduct relating to his professional behavior and his relationship with other members of the Hospital's staff. (R.R. 25a, E140.) On December 21, 1989, the Executive Committee, finding that the charges against Dr. Maliver constituted disruptive behavior, recommended that Dr. Maliver's clinical staff privileges be suspended for six months and that he undergo post-graduate medical study or retraining. (R.R. 29a, E146–E147.) Upon being notified of the recommendations of the Executive Committee and of his right to a hearing thereon before a Hearing Panel, Dr. Maliver notified the Hospital that he intended to appear before the Hearing Panel. (R.R. 30a.) Pursuant

1. See Pa.R.C.P. 1001.

2. In addition to Indiana Hospital and Confidential Peer Review Ltd., certain individuals were named as defendants. The individuals were other physicians as well as officers of the Hospital who were involved in the peer review procedure.

3. The eight counts of the complaint were: (1) Outrageous Conduct in Reckless Disregard of Plaintiff's Rights—Punitive Damages; (2) Interference with Contract; (3) Breach of Contract; (4) Intentional Interference with Prospective Contractual Relations; (5) Intentional Infliction of Emotional Distress; (6) Conspiracy; (7) Violation of Peer Review Protection Act; and (8) Defamation.

thereto, three physicians were appointed to conduct the hearing.

While the civil action (268 CD 1990) for the alleged improper conduct between April and July 1989 was pending in the trial court, the Hearing Panel conducted hearings on June 5, June 6, and September 5, 1990, in which Dr. Maliver participated. The Hearing Panel issued a report on September 17, 1990, in which it disagreed with the Executive Committee's recommendation that Dr. Maliver's clinical privileges be suspended but in which it recommended that Dr. Maliver obtain further training prior to scheduling another radical nephrectomy procedure until a preceptor certifies his ability to satisfactorily perform one. (R.R. 113.17a–113.25a, E168–E176.)

Subsequent to his receipt of the September 17, 1990 report and recommendations of the Hearing Panel, Dr. Maliver advised the Hospital that he did not intend to appeal that decision to the Board of Directors of the Hospital (Board) as was his right under Article IX, Part D, Section 1 of the medical staff bylaws. (E220–E221.) Notwithstanding Dr. Maliver's acceptance of the Hearing Panel's report, the Board proceeded to review the recommendations of both the Executive Committee and the Hearing Panel. Dr. Maliver objected to this review, alleging that it was prohibited by the medical staff bylaws. (E222–E226.)

The Board reviewed the recommendations of the Executive Committee and the Hearing Panel as well as the documents and exhibits introduced before the Hearing Panel, the transcript of the hearings and the medical staff bylaws. The Board rendered a decision on January 17, 1991 in which it imposed the following sanctions upon Dr. Maliver: (1) suspension of Dr. Maliver's privileges to perform any surgical procedure requiring the opening of the abdominal cavity and/or the retroperitoneal space, including radical nephrectomy surgery, until after the Board received certification of Dr. Maliver's qualifications to safely perform such procedures; (2) a leave of absence of not less than two months, to commence no later than July 1, 1991,

during which time no clinical privileges would be exercised and Dr. Maliver would undergo retraining; (3) an 18–month probationary period during which any alleged acts of serious professional misconduct shall be reported directly to the Board; (4) monitoring by other physicians of any or all surgical procedures to be performed by Dr. Maliver; and (5) a suggestion of counselling. (R.R. 113.41a–113.42a.)

Following receipt of the Board's decision and while his civil complaint (268 CD 1990) was pending in the trial court, Dr. Maliver, on January 28, 1991, filed a "Motion for Preliminary Injunction" with the trial court at the same docket number and under the same caption as his civil suit.[4] Dr. Maliver sought to enjoin enforcement of the Board's decision; in his motion he alleged that the Board's review of the Hearing Panel's decision was prohibited by the medical staff bylaws. The trial court entered an *ex parte* order on that date enjoining enforcement of the Board's decision pending a hearing on the continuance of the injunction.[5]

An evidentiary hearing on the continuation of the injunction was held before the trial court on February 13, 1991. Testimony was taken from Dr. Maliver and other witnesses who testified on behalf of both parties, and several documents were entered into evidence. The trial court issued an order on February 25, 1991, continuing the preliminary injunction entered by the court on January 28, 1991 to remain in full force and effect pending a hearing on the merits of the entry of a permanent injunction. The trial court further ordered that Dr. Maliver, prior to scheduling and performing another radical nephrectomy procedure, obtain further training until a preceptor certifies his ability

4. Actions at law cannot be a procedural vehicle for equitable relief. There is no authority in the Pennsylvania Rules of Civil Procedure for equitable relief in a civil action at law. *See D'Allessandro v. Wassel,* 526 Pa. 534, 587 A.2d 724 (1991); *City of Philadelphia v. Pennrose Management Co.,* 142 Pa.Commonwealth Ct. 627, 598 A.2d 105 (1991). Although the Motion for Preliminary Injunction in this civil action at law is in violation of our Rules of Civil Procedure, this violation was not raised before the trial court nor here.

5. The trial court also ordered that Dr. Maliver post a bond in the amount of $1,000.00; on January 28, 1991, the bond was posted.

to perform such procedures and to handle any complications therefrom. The Hospital filed an appeal from said order.[6]

The issue raised by the Hospital before us is whether the court has authority to review the substance of the Hospital's staffing decisions and to interfere with the Hospital's discretion in such matters. The Hospital argues that the trial court abused its discretion and committed an error of law by enjoining the Hospital's action.[7] Although we agree that the court was without authority to review the substance of the Hospital's staffing decision here, we affirm the trial court's grant of the preliminary injunction for the reason that the Hospital violated the procedural provisions of its bylaws.

Indiana Hospital was determined to be a private hospital in *Miller v. Indiana Hospital*, 277 Pa.Superior Ct. 370, 419 A.2d 1191 (1980). In *Rosenberg v. Holy Redeemer Hospital*, 351 Pa.Superior Ct. 399, 506 A.2d 408 (1986) *allocatur denied*, 514 Pa. 643, 523 A.2d 1132 (1986), the appellant, a physician who was denied appointment to the medical staff of Holy Redeemer Hospital, appealed to the Superior Court the summary judgment granted in favor of the hospital. The Superior Court, adopting the trial court's opinion in the matter, stated:

> "In the instant case, the record clearly shows that Holy Redeemer Hospital is entitled to summary judgment. *The Hospital has complied with the necessary procedural requirements in making its decision* concerning Dr. Rosenberg's application, and this Court has determined that *as a matter of law it is without authority to review the substance of that decision*. . . .

**6.** Indiana Hospital is a non-profit corporation organized under the laws of Pennsylvania. Jurisdiction over this matter lies in this Court by virtue of 42 Pa.C.S. § 762(a)(5).

**7.** Upon appeal from the grant or denial of a preliminary injunction, we, as an appellate court, will not review the merits of the controversy but will determine whether there were any apparently reasonable grounds to support the trial court's action and we will reverse only if no such grounds exist. *City of Philadelphia v. District Council 33, American Federation of State, County & Municipal Employees*, 525 Pa. 468, 581 A.2d 916 (1990).

"It should be noted additionally that there is no precedent in Pennsylvania case law for the substantive review of a private hospital's hiring decisions. While several states have held that Hospitals have a fiduciary duty to the public which permits some degree of judicial review of those institutions' decisions, *see Silver v. Castle*, 53 Haw. 475, 497 P.2d 564, *cert. denied*, 409 U.S. 1048, 93 S.Ct. 517, 34 L.Ed.2d 500 (1972), the majority of jurisdictions hold that staffing decisions are within the hospital's discretion and are not subject to judicial review. *Schiffman v. Manhattan Eye Ear & Throat Hospital*, 35 App.Div.2d 709, 314 N.Y.S.2d 823 (1970); *Moore v. Andalusia Hospital Inc.*, 284 Ala. 259, 224 So.2d 617 (1969); *Cowan v. Gibson*, 392 S.W.2d 307 (Mo.1965).

"The view that private hospital's hiring decisions should not be subject to judicial review remains sound. The administrative officers of a private institution are presumed to operate in the best interest of that institution. A court should be loathe to substitute its judgment on a matter as intrinsic to the hospital as is a staffing decision. Absent some legislative command to the contrary, the courts of this Commonwealth will not interfere with the substantive decisions of private hospitals, but will only ensure that such decisions are made pursuant to the proper procedures...."

351 Pa.Superior Ct. at 404, 407, 506 A.2d at 411, 412. (Emphasis added.)

The trial court in the instant case distinguished *Rosenberg* from the facts in the matter before it on the basis that *Rosenberg* involved a suit by an applicant for admission to the hospital's medical staff; the trial court determined that it is the hiring decisions of a hospital which are not subject to judicial review and that the principle does not apply to all staffing decisions such as suspension or demotion. Finding that a contractual relationship exists between a physician and a hospital, the trial court reasoned that it could enjoin the breach of that contract.

■ We reject the trial court's distinction between an initial hiring decision and a staffing decision for purposes of judicial review. There is no purpose to be served by allowing a private hospital discretion to hire whomever it determines is qualified to serve as a staff member, but interfering with that hospital's discretion to ensure that its staff members continue to be qualified. If this case were to be determined solely on the power of the court to review a private hospital's substantive decisions relative to its staff, we would reverse the trial court. The law is clear that courts, when reviewing actions of a private hospital, may review only procedural matters. *Rosenberg.* We thus address whether or not there was a violation of the procedures provided for in the bylaws of the Hospital.

■ Article IX of the medical staff bylaws sets forth Hearing and Appeal Procedures for the review of an unfavorable recommendation by the Executive Committee against a person on the medical staff. (E100–E116.) Article IX, Part D provides for appeal from the decision of the Hearing Panel to the Board, as follows:

ARTICLE IX—PART D: APPEAL

*Section 1. Time for Appeal:*

Within 15 days after the affected individual is notified of an adverse recommendation from the Hearing Panel, he may request an appellate review. The request shall be in writing, and shall be delivered to the Chief Executive Officer either in person or by certified mail, and shall include a brief statement of the reasons for appeal. If such appellate review is not requested within 15 days as provided herein, the affected individual shall be deemed to have accepted the recommendation involved and it shall thereupon become final and immediately effective.

ARTICLE IX—PART D:

*Section 2. Grounds for Appeal:*

The grounds for appeal from an adverse recommendation shall be that:

(a) there was substantial failure on the part of the Executive Committee or Hearing Panel to comply with the hospital or medical staff bylaws in the conduct of hearings and recommendations based upon hearings so as to deny due process or a fair hearing; or

(b) the above recommendations were made arbitrarily, capriciously or with prejudice; or

(c) the above recommendations were not supported by the evidence.

(E113–E114.)

In Dr. Maliver's Motion for Preliminary Injunction, he averred that the Board was without authority to review the report of the Hearing Panel since he did not appeal that report. (R.R. 104a–111a.) Clearly, the medical staff by-laws provide for an appeal to the Board only when "the affected individual is notified of an adverse recommendation from the Hearing Panel." Dr. Maliver, the affected individual, did not appeal the Hearing Panel's recommendations; there is no provision in the medical staff bylaws for an appeal to the Board by the Hospital.

We may affirm the judgment of a trial court where the result is correct, even though the reason given is erroneous, when, as herein, the correct basis for the decision is clear on the record. *Rhoads v. Lancaster Parking Authority*, 103 Pa.Commonwealth Ct. 303, 520 A.2d 122 (1987), *allocatur denied*, 515 Pa. 611, 529 A.2d 1084 (1987). Accordingly, we affirm the trial court's grant of the preliminary injunction since there are reasonable grounds in the bylaws of the Hospital in support thereof.

## ORDER

AND NOW, this 7th day of February, 1992, the order of the Court of Common Pleas of Indiana County, dated February 25, 1991, is affirmed.