654 A.2d 547

Harry A. COOPER, D.O., Appellees,

v.

DELAWARE VALLEY MEDICAL CENTER, Harry Glass, D.O., Bart Butta, D.O., Angelo Zappala, D.O., Sal Cerniglia, D.O., Peter Molle, D.O., Leonard Davidson, D.O., Steven Ficci, D.O., Andrew Friedman, D.O., Seymour Kessler, D.O., Leonard Limongelli, D.O., Louis Pearlstein, D.O., Robert Brehouse, D.O., James C. Rossi, D.O., Martin Schetchter, D.O., Walter Snyder,

D.O., Keith W. Harvie, D.O., Henry Dubiel, D.O., Anthony Mangiracina, D.O., Harold Feiler, D.O., Roderick Cannatella, D.O., Frank Rizzo, D.O., Joseph Flynn, D.O., Morris Rossman, D.O., James Rae, D.O., Frank Perrone, D.O., I. Joel Berman, D.O., Lester Ruppersberger, D.O., Jeffrey Selk, D.O. and Annette Catino, Appellants.

Supreme Court of Pennsylvania.

Argued Oct. 19, 1994.

Decided Feb. 15, 1995.

622

Brian M. Peters, Jonathan Sprague, Philadelphia, for Delaware Valley Medical Center, et al.

Richard K. Masterson, Norristown, for B. Amster, D.O.

David L. Pennington, Philadelphia, for H. Cooper, D.O.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

MONTEMURO, Justice.

This case is about the degree to which our courts have the authority to review matters that arise within the context of peer review. We granted allocatur to resolve any conflicts in the lower courts as to the proper scope of judicial review of hospital staffing decisions. Moreover, we agreed to determine, as it is a matter of first impression, whether a hospital enjoys immunity for good faith peer review under 63 Pa.S. § 425.3. Because the Superior Court correctly decided these issues, we affirm.

This matter has a long and involved procedural and factual history which will be set out at length to facilitate understanding.

In 1979, appellee, Harry Cooper, started a four-year residency in orthopedic surgery at Delaware Valley Medical Center (DVMC). Appellee's residency was performed under the training of Bernard Amster, D.O. It was appellee's testimony that he accepted the residency with the understanding that, at its completion, he would join Dr. Amster in his practice and be permitted to treat unassigned emergency room patients at DVMC. For each year of his residency, appellee executed a resident-hospital contract. The contracts lacked any reference to guaranteeing Cooper the privilege of treating emergency room patients upon the successful completion of residency.

During the third year of Dr. Cooper's residency, internal problems developed among DVMC's Board of Directors. A lawsuit was filed by half of the Board members against Drs. Amster, Berman, and Glass alleging that they had created conflicts to prevent expansion of the hospital and prevent admission, to the staff, of physicians who would compete in the

same practice areas as the defendant doctors. A countersuit was filed. Both suits were settled, and ultimately Dr. Amster's faction gained control of the Board.

During Dr. Cooper's final year of residency, the new Board, under the guidance of Dr. Amster, adopted new rules and regulations for the division of orthopedic surgery on July 30, 1982. The critical impact of the new rules was that DVMC established written eligibility criteria for orthopedists wishing to treat unassigned emergency room patients. Specifically, the new rules established the following four requirements for a doctor seeking to treat unassigned emergency room patients: (a) an AOA approved internship and an AOA residency; (b) certification in orthopedic surgery by the American Osteopathic Academy of Orthopedics; (c) be an active staff physician for at least three years; and (d) he must admit at least fifty (50) patients per year to the orthopedic service from his practice.

On June 30, 1983, appellee successfully completed his residency at DVMC and received certification from Dr. Amster. Two weeks earlier, the DVMC Credentials Committee had recommended Dr. Cooper for active staff privileges on a six month probationary basis.

Dr. Cooper submitted a formal, written request to Dr. Amster to treat unassigned emergency room patients at DVMC on October 2, 1984. Dr. Amster did not respond to appellee's request. Consequently, Dr. Amster remained the only orthopedic surgeon eligible to receive unassigned emergency room patients at DVMC. In February of 1985, appellee sent a letter to the DVMC Medical Executive Committee requesting privileges to treat unassigned emergency room patients. In his letter to the Medical Executive Committee, Dr. Cooper reaffirmed that he was told at the beginning of his residency he would have such privileges, if he chose to practice at DVMC. The Medical Executive Committee held a hearing on this matter on March 28, 1985, and subsequently denied appellee's request to treat unassigned emergency room patients because he failed to meet the new criteria.

This chain of events led appellee to file a federal lawsuit in 1985, alleging anti-trust violations on the part of Dr. Amster and DVMC. The federal suit was dismissed when the Honorable J. William Ditter, Jr., determined that the matter was not ripe for adjudication, because appellant had not exhausted his remedies within the DVMC administrative appeal process. *Cooper v. Amster*, 645 F.Supp. 46 (E.D.Pa.1986). The Third Circuit Court of Appeals affirmed in an unreported Memorandum Opinion.

In February 1986, appellee filed a saving action in the Bucks County Court of Common Pleas against DVMC, Dr. Amster, Dr. Newman, Dr. Stepanuk, and Metropolitan Hospital–Parkview Division. The complaint was based on theories of tortious interference with prospective contractual relations, promissory estoppel, fraud, misrepresentation, and breach of implied contract. The state court action focused on the refusal to grant appellant emergency room privileges at DVMC. Preliminary objections were filed and the trial court granted appellee leave to amend his complaint. The amended complaint named only Dr. Amster and DVMC as defendants.

Before the federal lawsuit had been dismissed for ripeness, the time arose for appellee's 1986 annual reappointment review for general staff privileges. Dr. Amster informed DVMC's administration that he could not review Dr. Cooper's credentials because appellee had named him as a party defendant in a federal lawsuit. Consequently, DVMC retained an independent orthopedist, Dr. Keith Harvie, to perform the review. Dr. Harvie's review included interviews with Drs. Master and Stepanuk, both of whom were defendants in appellee's lawsuits, and a full interview with appellee. On November 25, 1986, in accord with Dr. Harvie's September 22, 1986, report, the DVMC Credentials Committee voted to limit appellee's general staff privileges.

Dr. Cooper proceeded to exhaust all of DVMC's internal administrative appeals. However, the decision of the Credentials Committee remained unchanged. As a result, on March 18, 1988, Dr. Cooper instituted a civil action in the Court of Common Pleas of Philadelphia County against Dr. Amster,

DVMC, and thirty-six individual defendants. This second state court action alleged: 1) federal and state due process and equal protection violations; 2) a violation of state anti-trust laws; 3) tortious interference with business relationships; 4) intentional infliction of mental and emotional distress; 5) libel and slander; 6) breach of contract; and 7) a violation of the Health Care Facilities Act, 35 Pa.S. § 448. The counts alleging violations of state anti-trust laws and the Health Care Facilities Act were dismissed pursuant to an Order sustaining DVMC's preliminary objections.

On July 2, 1990, the 1988 Philadelphia County action was transferred to Bucks County and coordinated with the 1986 Bucks County action.

In November 1991, DVMC and Dr. Amster filed separate Motions for Summary Judgment. In a single order, the trial court granted the motion of DVMC and the thirty individual defendants [1] as to all causes of action in both of appellee's complaints. Judge Biester concluded that it was precluded from engaging in a substantive review of the hospital's staffing decisions by reason of the Superior Court's holding in *Rosenberg v. Holy Redeemer Hospital,* 351 Pa.Super. 399, 506 A.2d 408 (1986), *allocature denied,* 514 Pa. 643, 523 A.2d 1132 (1986). Moreover, the trial court found that the thirty individual defendants were immune from liability pursuant to the provisions of the Pennsylvania Peer Review Protection Act, 63 Pa.S. § 425. Dr. Amster's motion was granted with respect to the claims under the Fourteenth Amendment; for intentional infliction of emotional distress; and for defamation. With respect to all other claims, Dr. Amster's motion was denied.

As a result of the trial court's order, Dr. Cooper appealed to the Superior Court. The Superior Court reviewed the issues raised, and consolidated them into two primary areas of concern. First, Dr. Cooper disputed the interpretation and application of *Rosenberg v. Holy Redeemer Hospital. Cooper v. Delaware Valley Medical Center,* 428 Pa.Super. 1, 630 A.2d

---

1. After several petitions for voluntary discontinuance, only thirty defendants remained at the time of the Summary Judgment motions from the original thirty-six.

1 (1993). Second, Dr. Cooper questioned the interpretation and application of the immunity provisions of the Peer Review Protection Act. *Id.*

The Superior Court found that the trial court had interpreted *Rosenberg* too broadly and distinguished the instant matter from *Rosenberg.* Moreover, the Superior Court found that the immunity provisions of the Peer Review Protection Act do not extend to hospitals, but are limited to individuals. After establishing that the DVMC was not immune and that Dr. Cooper's action was not completely prohibited by *Rosenberg,* the court went on to discuss the correctness of the trial court's order of summary judgment. The Superior Court held that there were issues of fact as to whether some individuals were motivated by malice so as not to be immune under the Peer Review Protection Act. Accordingly, the Superior Court found that the trial court's grant of summary judgment was in error and the Superior Court reversed and remanded the matter to the trial court. *Id.*

Delaware Valley Medical Center filed a petition for allowance of appeal with this Court. In its petition, DVMC asserted that the Superior Court's decision was in conflict with other decisions of the Superior and Commonwealth Courts.[2] Moreover, it averred that construction of the immunity provision of the Peer Review Protection Act as to hospitals was a matter of first impression and required our review. We agreed, and granted the petition on March 31, 1994. *Delaware Valley Medical Center v. Cooper,* 536 Pa. 642, 639 A.2d 28 (1994). Oral argument was heard on October 19, 1994.

Pursuant to 42 Pa.C.S. § 724, the Supreme Court of Pennsylvania has jurisdiction over this appeal from the final Order, entered by the Superior Court of Pennsylvania dated September 10, 1993, denying Hospital appellants' application for *en banc* reargument of the order, entered by the Superior Court

**2.** Namely, *Rosenberg v. Holy Redeemer Hospital,* 351 Pa.Super. 399, 506 A.2d 408 (1986), *allocatur denied,* 514 Pa. 643, 523 A.2d 1132 (1986), and *Sandoval v. Maliver,* 145 Pa.Commw. 439, 603 A.2d 695 (1992), *allocatur denied,* 532 Pa. 667, 616 A.2d 987 (1992). *Sandoval,* specifically relies upon *Rosenberg.* Accordingly, our discussion of *Rosenberg* will effect the precedential weight attributed *Sandoval.*

of Pennsylvania on June 18, 1993, reversing the order entered January 3, 1992, in the Court of Common Pleas of Bucks County.

■ The first issue raised is whether the Pennsylvania Courts, as a matter of public policy, should review a private hospital's medical staffing rules and regulations, peer review and credentialing decisions. Before specifically addressing this issue, a brief examination of the competing interests in peer review is advantageous.

Peer review can best be understood if one realizes that in most cases doctors with hospital privileges are not employees of the hospital, instead, they are independent contractors who must be granted permission to admit patients and make use of the hospital's resources. Timmothy Stoltzfus Jost, *The Necessary and Proper Role of Regulation to Assure the Quality of Health Care*, 25 Hous.L.Rev. 525, 553 (1988). A physician receives permission to use the hospital when he receives a vote of approval from his colleagues. Peer review is the common method for exercising self regulatory competence and evaluating physicians for privileges. M. Bertolet, *Hospital Liability Law and Practice* 41 (5th ed. 1987). The purpose of this privilege system is to improve the quality of health care, and reflects a widespread belief that the medical profession is best qualified to police its own. Thus, it is beyond question that peer review committees play a critical role in the effort to maintain high professional standards in the medical practice.

The goal of protecting patients and the general public from less than competent physicians is balanced against the rights of the private physician. The worst possible punishment for a physician is a "denial of privileges based upon a physician's poor performance, inferior qualifications, or disruptive behavior." Jacqueline Oliverio, Note, *Hospital Liability for Defamation of Character During the Peer Review Process: Sticks and Stones May Break My Bones, but Words May Cost Me My Job*, 92 W.Va.L.Rev. 739 (1990). Finding gainful employment in the hospital setting after a poor review is unlikely as a result of the provisions of the Health Care Quality Improve-

ment Act of 1986, 42 U.S.C. §§ 11101–52 (1986), which requires that doctors who have been denied privileges be reported to a national service. *Id.* Hospitals must check with this service that keeps track of inadequate and poorly qualified physicians before hiring a new doctor to assure that he has not been rejected by other health care facilities. *Id.*

We review this matter in light of these competing interests.

Appellants assert that the Superior Court decision in *Rosenberg* stands for the proposition that Pennsylvania Courts will only review the procedural aspects of peer review. For example, appellants claim that under the *Rosenberg* doctrine the courts will only look to see that the physician received notice and that he had a hearing. The courts will not review the substantive decisions of the peer review committee.

In *Rosenberg*, Dr. Rosenberg applied for appointment to the active medical staff at Holy Redeemer Hospital. *Rosenberg v. Holy Redeemer Hosp.*, 351 Pa.Super. 399, 506 A.2d 408 (1986), *allocatur denied*, 514 Pa. 643, 523 A.2d 1132 (1986). His application was denied and Dr. Rosenberg was notified of the Hospital's decision. *Id.* Dr. Rosenberg exhausted the hospital's administrative appeal process; however, he remained unsuccessful. Dr. Rosenberg then filed suit against the Hospital seeking injunctive relief from the decision to deny him staff privileges. *Id.*

At first, Dr. Rosenberg was successful. The trial court remanded the matter to the Hospital's Appellate Review Committee after Dr. Rosenberg prevailed on a summary judgment motion. Nevertheless, the hospital decided to deny Dr. Rosenberg's application after a de novo hearing. *Id.* Dr. Rosenberg then filed a petition for Supplemental Injunctive Relief. In response to that petition, the hospital filed a motion for Summary Judgment, asserting that the trial court lacked authority, as a matter of law, to review the substance of a hospital staffing decision. The hospital's motion was granted and Dr. Rosenberg appealed to the Superior Court.

The Superior Court in *Rosenberg* found that the hospital did not meet the test for a quasi-public hospital. Therefore, Dr.

Rosenberg's due process claims must fail because the hospital's conduct does not amount to state action. Next, the Superior Court stated:

It should be noted additionally that there is no precedent in Pennsylvania case law for the substantive review of a private hospital's hiring decisions. While several states have held that hospitals have a fiduciary duty to the public which permits some degree of judicial review of those institutions' decisions, the majority of jurisdictions hold that staffing decisions are within the hospital's discretion and are not subject to judicial review.

The view that private hospital's hiring decisions should not be subject to judicial review remains sound. The administrative officers of a private institution are presumed to operate in the best interest of that institution. A court should be loathe to substitute its judgment on a matter as intrinsic to the hospital as is a staffing decision. Absent some legislative command to the contrary, the courts of this Commonwealth will not interfere with the substantive decisions of private hospitals, but will only ensure that such decisions are made pursuant to the proper procedures.

*Rosenberg v. Holy Redeemer Hosp.*, 351 Pa.Super. at 407, 506 A.2d at 412 (quoting *Rosenberg v. Holy Redeemer Hosp.*, No. 82–01371 (Court of Common Pleas, Montgomery County)) (citations omitted). Accordingly, the Superior Court affirmed the trial court.

The Superior Court in *Cooper,* when confronted with the matter at hand, reviewed the panel's decision in *Rosenberg* and held that it does not stand for the proposition that no action at law or equity may be brought resulting from a staffing decision of a private hospital. *Cooper v. Delaware Valley Medical Center,* 428 Pa.Super. 1, 12, 630 A.2d 1, 6 (1993). Instead, the court held that *Rosenberg* was limited to the facts of that particular case. *Id.* The *Cooper* court attempted to distinguish the instant case from *Rosenberg* by emphasizing the remedies sought. Rosenberg was seeking an injunction to have a staffing decision changed, unlike Cooper

who sought damages under various tort and contract theories arising out of the peer review process.

We find this distinction persuasive. Accordingly, we will review suits based on legitimate contract and tort theories that arise out of the peer review process. While suits are not completely barred because they originate in the peer review setting, the type of redress an injured physician may pursue is limited by the Pennsylvania Peer Review Act.

■ Which leads us to the second issue raised by appellants. The Pennsylvania Peer Review Protection Act, 63 Pa.S. § 425.3 (the Act) encourages peer review by granting participants in the process limited immunity from suit. The appellant has raised the issue of whether this immunity is extended to hospitals.

The DVMC argues that the Act's plain meaning, legislative intent, and the rules of statutory construction mandate that the Act's limited immunity applies to organizational entities and not just natural individuals. The immunity provision of the Act reads as follows:

§ 425.3   Immunity from liability

(a) Notwithstanding any other provision of law, no *person* providing information to any review organization shall be held, by reason of having provided such information to have violated any criminal law, or to be civilly liable under any law, unless:

(1) such information is unrelated to the performance of the duties and functions of such review organizations, or

(2) such information is false and the person providing such information knew, or had reason to believe, that such information was false.

(b)(1) No *individual* who, as a member or employee of any review organization or who furnishes professional counsel or services to such organization, shall be held by reason of the performance by him of any duty, function, or activity authorized or required of review organizations, to have violated any criminal law, or to be civilly liable under any law, provided he has exercised due care.

(2) The provisions of paragraph (1) of this subsection shall not apply with respect to any action taken by any individual if such individual, in light of such action, was motivated by malice toward any person affected by such action.

63 P.S. § 425.3 1974, July 20, P.L. 564, No. 193, § 3, imd. effective (emphasis added).

When reviewing a statute, we are guided by the principles set out in the Statutory Construction Act, 1 P.S. § 1501–1991.[3] Section 1991 defines "person" to include a corporation, partnership, business trust, other association, government entity (other than the Commonwealth), estate, trust, foundation or natural person. 1 P.S. § 1991. Section 1991 also defines "individual". An "individual" is a natural person. *Id.*

The Act specifically grants immunity to hospitals as corporations in section 425.3(a) for providing relevant and truthful information to peer review committees. 63 P.S. § 425.3(a)(1) and (2). However, subsection (b) only protects "individuals". The hospital is not protected by this paragraph.

Appellants argue that policy requires that we extend the immunity provisions of section 425.3(b) to corporations and that the legislature did not intend to exclude hospitals from subsection (b) immunity. The object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly. 1 P.S. § 1921(a). Regardless, when the words of the statute are clear and free from all ambiguity, we will not disregard the letter of the law under the pretext of pursuing its spirit. 1 P.S. § 1921(b). The legislature chose the term "individual". Section 425.3(b) applies to natural persons. Therefore, section 425.3(b) does not apply to hospitals.

■ Finally we must review the trial court's grant of summary judgment. An appellate court may disturb the order of the trial court only where there has been an error of law or a manifest abuse of discretion. Notwithstanding, the scope of review is plenary and the appellate court shall apply the same standard for summary judgment as the trial court. Summary

3. 1972, Dec. 6, P.L. 1339, No. 290, § 3, imd. effective.

judgment is granted only in the clearest of cases, where the right is clear and free from doubt. The moving party has the burden of proving the nonexistence of any genuine issue of fact. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Thompson Coal Company v. Pike Coal Company,* 488 Pa. 198, 412 A.2d 466 (1979).

With this standard of review in mind, we now turn to the instant case. The trial court granted relief to DVMC on all counts on the basis of *Rosenberg.* The trial court granted summary judgment of all claims against the additional individual appellants on the basis of the immunity provisions of the Pennsylvania Peer Review Protection Act. Immunity, provided by the Act, may not be applicable if any action taken by an individual is motivated by malice.

The trial court found no genuine issues of material fact as to whether any of the individual's acted with malice. The Superior Court disagreed. The Superior Court noted that in order for Dr. Cooper to proceed on various causes of action against the individual appellees based on their participation in his peer review, he must be able to establish that their actions toward him were motivated by malice. The court then went on to adopt an all inclusive definition of "malice". The Superior Court held that in the context of peer review "malice" means a primary purpose other than the safeguarding of patients. 428 Pa.Super. at 19, 630 A.2d at 10. Judge Wieand in his concurring opinion noted that it was unnecessary to advance this broad definition of "malice". 428 Pa.Super. at 25–26, 630 A.2d at 13 (Wieand, J. concurring). We agree.

"Malice" is not defined in the Peer Review Protection Act. Accordingly, we are again guided by the principles set out in the Statutory Construction Act, 1 P.S. § 1901. Section 1903 of the Statutory Construction Act requires that

Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are

defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.

1 P.S. § 1903(a). "Malice" is a word that has acquired a peculiar legal meaning. Black's Law Dictionary defines it as the "intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent." Black's Law Dictionary 862 (5th ed. 1979). This Court has supplemented this definition often and said that "malice" does not necessarily mean a particular ill-will toward another; it comprehends in certain cases recklessness of consequences and a mind regardless of social duty. *Montgomery v. Dennison,* 363 Pa. 255, 69 A.2d 520 (1949); *see also Hugee v. Pennsylvania R. Co.,* 376 Pa. 286, 101 A.2d 740 (1954). Consequently, we adopt this definition of "malice" instead of the Superior Court's broad definition.

■ While we disagree with the Superior Court's definition of malice, we agree with its conclusion that the record demonstrates that genuine issues of fact existed as to whether the conduct of some of the appellants was motivated by malice. The depositions of Mr. Steinberg, Dr. Lindenbaum, and Dr. Smith, when reviewed in a light favorable to Dr. Cooper, as required, disclose genuine issues of fact. *See Cooper,* 428 Pa.Super. at 20–21, 630 A.2d at 10–11. Summary judgment was premature.

■ In addition, we find informative the Superior Court's instructions regarding Dr. Cooper's burden on remand and adopt them as our own.

The legislature's clear purpose in enacting the Peer Review Act was to protect peer review participants not just from liability but also from becoming involved in litigation at all. This purpose would be defeated if mere bald allegations or speculations about malicious intent were sufficient to pierce the immunity of The Act. A party seeking to circumvent the bar of The Act must set out his cause with specificity. It is precisely this standard which will deny substantial relief to [Dr. Cooper] on remand. In his amended com-

plaint, [Dr. Cooper] has included most of the individuals who participated at any level in the challenged review process. The averments regarding most of these participants named by [Dr. Cooper] are non-specific and fall under a general conspiracy theory. Such vague allegations are insufficient as a matter of law to pierce the protection of immunity afforded by The Act.

Looking at [Dr. Cooper's] complaint, his underlying premise regarding malice is that the institution of a new set of credentialing criteria by the hospital and its board of directors was done solely to enhance their own economic self-interest. Consequently, when these criteria were utilized in his peer review process to find him wanting, it was a malicious abuse of the peer review process. Clearly, [Dr. Cooper's] claim relates to specific individuals who had some input in the development of the new credentialing criteria. Therefore, we agree with the trial court that to the extent other participants in the peer review process merely utilized the adopted set of criteria to assess [Dr. Cooper's] credentials, they were engaging in proper and protected peer review activity. Such activity will, and should remain immune from civil liability.

*Cooper v. Delaware Valley Medical Center,* 428 Pa.Super. 1, 22, 630 A.2d 1, 11–12 (1993).

Accordingly, we affirm the order of the Superior Court which reversed and remanded the grant of summary judgment.

PAPADAKOS, J., did not participate in the decision of this case.

ZAPPALA, J., concurs in the result.

MONTEMURO, J., is sitting by designation.