**Saad v. Sacred Heart Hospital**

C.P. of Lehigh County, no. 95-E-49.

*Donald H. Lipson,* for plaintiff.
*Frederick J. Lanshe,* for defendant.

PLATT, *J.,* March 7, 1997—The plaintiff, Fathy Z. Saad M.D., was accepted by the defendant, Sacred Heart Hospital, into its family practice residency program on July 1, 1993. (N.T. 2/12/96 at 21.) A resident must successfully complete three years in the family practice residency program in order to receive accreditation or board certification. (N.T. 2/28/96 at 71.) Plaintiff began defendant's program with a one-year residency contract that lasted until June 30, 1994. (N.T. 2/28/96 at 81.) Instead of renewing plaintiff's contract for a second year, defendant extended his first-year contract for three months so that he might receive additional training. (N.T. 2/28/96 at 81.) On October 1, 1994, plaintiff was

promoted to his second year, or PG-2, under supervision. (N.T. 2/28/96 at 82.) Plaintiff's second-year contract covered the period from October 1, 1994 to September 30, 1995. (N.T. 2/28/96 at 83; exhibit P-2.)

On April 28, 1995, plaintiff received a letter from defendant's program informing him that he was being released from the program as of June 30, 1995. (N.T. 2/28/96 at 25; exhibit D-1 letter from Buch to Saad of 4/28/95.) On July 5, 1995, plaintiff filed a complaint in equity requesting a preliminary and final injunction to (1) enjoin defendant from removing plaintiff from its residency program until he was afforded a fair due process hearing; and (2) to reinstate plaintiff as a resident in the program. On July 6, 1995, the Honorable William E. Ford entered an order enjoining the defendant from releasing and terminating plaintiff "pending administrative due process proceedings and a determination on the merits of the case" by the defendant. (Order 7/6/95.)

Plaintiff requested a due process hearing and he was notified by letter of the date of the hearing. (Exhibit D-1 letter from Lanshe to Saad of 8/8/95.) That letter also informed plaintiff that he was permitted to bring legal counsel, to call witnesses, and to cross-examine witnesses, and that the hearings would be tape-recorded. The names of the members of the hearing panel and the names of the witnesses that defendant intended to call were also divulged.

Hearings were held before a panel of three physicians in accordance with the medical staff bylaws on August 17, 1995, September 14, 1995, and September 28, 1995. The Residency Review Committee Hearing Panel unanimously concurred with the decision of the family practice residency program to release plaintiff from his contract and a summary of their decision was sent to plaintiff on October 13, 1995, along with the procedure for

appeal in the hospital bylaws. (Exhibit D-1 letter from Cimerola to Saad of 10/13/95.) Plaintiff exercised his right to appeal to the board of trustees. (Exhibit D-1 letter from Lipson to Cimerola of 10/17/95.) Plaintiff was notified that the hearing was scheduled for December 8, 1995 and plaintiff was given relevant bylaws, hearing panel recommendations, exhibits introduced at the hearing (including plaintiff's personnel file), and Notes of Testimony from the hearings. (Exhibit D-1 letter from Cimerola to Saad of 12/4/95.) The appellate review committee, consisting of one member of the medical staff and three members of the board of directors, as required by the hospital bylaws, found no basis to overturn the decision of the residency review committee. Notice of this decision was supplied to plaintiff on January 3, 1996. (Exhibit D-1 letter from Cimerola to Saad of 1/3/96.)

Plaintiff filed an amended complaint on February 22, 1996 alleging breach of an express contract with defendant, breach of an implied contract with the defendant, violation of due process, credit for two years of training, and contempt of court. Plaintiff prayed only for equitable relief in the form of a preliminary and final injunction directing defendant to reinstate plaintiff in the program to permit him to complete his residency, to pay counsel fees and costs, and to pay other equitable relief.

A hearing was held before this court on February 12, 1996, and February 28, 1996 on plaintiff's request for a continuing and permanent injunction. After a hearing and complete consideration of the evidence, as well as the memoranda from counsel, an order was entered on March 26, 1996, denying plaintiff's requests for a continuing temporary injunction and for a permanent injunction since plaintiff has been afforded an adequate

due process hearing by defendant prior to his final termination.

On April 1, 1996, plaintiff filed a motion for post-trial relief asking this court to modify or change its order of March 26, 1996. After oral argument and consideration of the memoranda from counsel, this court denies plaintiff's motion for post-trial relief.

Plaintiff first asserts that residents in a medical program offered by an accredited hospital are entitled to due process prior to their termination. Plaintiff is entitled to due process if he was deprived of a property or liberty interest. The United States Supreme Court has assumed that, under similar circumstances, a medical student has either a property or liberty interest in her opportunity to pursue her medical education. *Board of Curators of University of Missouri v. Horowitz,* 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978). The courts of Pennsylvania have never squarely addressed the issue. In order to evaluate whether plaintiff was afforded due process, I assumed that plaintiff had a property or liberty interest in his opportunity to continue his residency.

The next issue, then, is what process was due plaintiff. Plaintiff argues that not only must the procedures followed be adequate, but that there must also be substantial evidence to support the decision of the hearing panel. This is necessary, he says, in order to test whether the action was arbitrary. Specifically, he argues that he was denied a fair hearing because there was not substantial evidence to support the hearing panel's decision in this case. Plaintiff cites *Boehm v. University of Pennsylvania School of Veterinary Medicine,* 392 Pa. Super. 502, 573 A.2d 575 (1990), *alloc. denied,* 527 Pa. 596, 589 A.2d 687 (1990) to support his position. *Boehm* involved an appeal from an order preliminarily

enjoining the defendant from enforcing disciplinary sanctions levied against two students. The Superior Court began its opinion by distinguishing between private and public institutions. It noted that the scope of judicial review of disciplinary proceedings at private institutions was not settled, and, therefore, analyzed several federal cases dealing with that issue.

Plaintiff relies on one of the cases quoted in *Boehm* to support his view that this court should substantively review the hearing panel's decision. That case, from the Tenth Circuit, states that:

"[I]f the regulations concerned are reasonable; if they are known to the student or should have been; if the proceedings are before the appropriate persons with authority to act, to find facts, or to make recommendations; and if procedural due process was accorded the student, then the findings *when supported by substantial evidence* must be accorded some presumption of correctness. The adequacy of the procedure plus the substantial evidence element constitute the basis and the record to test whether the action was arbitrary." *Id.* at 512, 573 A.2d at 580 (quoting *Slaughter v. Brigham Young University,* 514 F.2d 622, 625 (10th Cir. 1975), *cert. denied,* 423 U.S. 898, 96 S.Ct. 202, 46 L.Ed.2d 131 (1975). (emphasis added)

However, this is but one of the cases reviewed in the *Boehm* opinion, and the United States Supreme Court has questioned the authority of the federal courts to substantively review academic dismissals and enjoin them if they are shown to be arbitrary or capricious. *Board of Curators of University of Missouri, supra.*

Ultimately, the Superior Court in *Boehm* synthesized all of the cases that it reviewed and concluded that courts are more reluctant to interfere with decisions of private institutions. Of course, an institution must

substantially comply with its established procedures, and the proceedings must be fundamentally fair before action can be taken against an individual. The actual holding of *Boehm* was that the disciplinary proceedings complied with due process where the hearing was held before an impartial panel, the students were given a fundamentally fair hearing, and the disciplinary proceedings complied fully with procedures established by the school. The court declined to review the institution's proceedings under a substantial evidence standard.

Furthermore, the scope of review in the case of private hospital staffing decisions has been addressed by the courts and is extremely limited. As a matter of law, this court is without authority to review on a substantive level the decision of Sacred Heart Hospital to decline to renew plaintiff's residency contract. *Rosenberg v. Holy Redeemer Hospital,* 351 Pa. Super. 399, 407, 506 A.2d 408, 412 (1986), *alloc. denied,* 514 Pa. 643, 523 A.2d 1132 (1986). Instead, this court may only confirm that the decision by the defendant was made according to the proper procedures. *Id.* In *Rosenberg,* the Superior Court explained the reason behind its holding:

"The view that [a] private hospital's hiring decisions should not be subject to judicial review remains sound. The administrative officers of a private institution are presumed to operate in the best interest of that institution. A court should be loathe to substitute its judgment on a matter as intrinsic to the hospital as is a staffing decision." *Id.*

In *Rosenberg,* the court rejected the appellant's claim that the hospital acted arbitrarily and capriciously because it refused to review the hospital decision on a substantive level. Similarly, in this case, plaintiff's claim that the defendant's decision was not based on sub-

stantial evidence, and, therefore, was arbitrary, must fail.

The scope of review in *Rosenberg* was adopted by the Supreme Court of Pennsylvania in *Cooper v. Delaware Valley Medical Center,* 539 Pa. 620, 654 A.2d 547 (1995). Although drawing a distinction based on the remedy sought, the court held that where a party is seeking an injunction to have a staffing decision changed, that decision will not be subject to substantive review by a court. *Id.* at 630, 654 A.2d at 552. However, a court can review a legitimate contract or tort theory arising out of the peer review process. *Id.* at 631, 654 A.2d at 552.

In the case at hand, plaintiff is seeking only equitable relief by way of a continuing or permanent injunction. Therefore, the standard set forth in *Rosenberg* and adopted in *Cooper* is controlling in this case, and this court's review is limited to ensuring that the proper procedures were followed before defendant's termination.

The plaintiff was afforded an adequate due process hearing by defendant prior to his final termination from the family practice residency program. As stated earlier, in *Boehm,* the court held that the disciplinary proceedings in that case complied with due process and were fundamentally fair where the hearing was held before an impartial panel, the students were given a fair hearing, the disciplinary proceedings complied fully with procedures established by the school and were fundamentally fair. Specifically,

"The accused students were given notice of the charges against them and also of the evidence against

them. They were present at and participated in a hearing which lasted approximately 10 1/2 hours. At this hearing they were assisted by a faculty advisor and were permitted to cross-examine witnesses who testified against them and call witnesses to testify on their behalf. After the hearing, the hearing panel prepared a detailed decision, including findings of fact . . . ." *Boehm, supra* at 515, 573 A.2d at 582.

Under plaintiff's contract with defendant, he was entitled to the following with regard to termination:

"The parties further agree that neither party will terminate this agreement prior to the expiration date without prior notice and without providing the other party with the opportunity to discuss freely any differences, dissatisfactions or grievances that may exist. If this agreement is terminated prior to its expiration date, each party at its option may submit an explanatory statement to the Council on Medical Education of the American Medical Association and the American Academy of Family Practice." (Exhibit P-2 at 4.)

Defendant substantially complied with the procedures established in the above contract. Defendant testified that he was given written notice on April 28, 1995 of his release from the program, and that his supervisor, Dr. Buch, discussed his release with him. (N.T. 2/12/96 at 25.) Plaintiff never submitted an explanatory statement to the appropriate authorities. Defendant then went beyond its contract with plaintiff and gave him the same administrative process as a staff physician under the Health Care Quality Improvement Act, 42 U.S.C., §11112 (1995), which is incorporated into defendant's bylaws.

Under that Act, adequate notice and fair hearing procedures are presumed if the following steps are taken

by a hospital with respect to the peer review process: notice that professional review action is proposed to be taken and the reasons for the action; notice of the right to request a hearing and any time limit for that request; a summary of the physician's hearing rights; if a hearing is requested, notice of the place, time, and date of the hearing and a list of witnesses that the hospital intends to call; a hearing before a panel of individuals appointed by the hospital and not in direct economic competition with the physician; notice of the right to representation by an attorney, to record the proceedings, to call, examine, and cross-examine witnesses, to present relevant evidence, and to submit a written statement at the close of the hearing; and the right to receive a written recommendation of the hearing panel with a statement of basis for their recommendation.

Defendant substantially complied with the Act's procedures as well and the hearings were fundamentally fair. As in *Boehm,* plaintiff was given notice of his release and the reasons and also notice of the evidence that defendant was going to use at the hearings. Plaintiff was present at and participated in the hearings which covered three different dates. Plaintiff was represented by an attorney at all relevant times and was permitted to call witnesses to testify on his behalf and to cross-examine witnesses who testified against him. After the hearing, the hearing panel prepared its decision and gave reasons to support it. Plaintiff was also given a fair appeal process that was similar to the hearing process. Therefore, in light of the above, plaintiff was afforded an adequate due process hearing that substantially complied with the procedures established by defendant and that was fundamentally fair.

Plaintiff argues that he was denied a fair hearing because two members of the hearing panel failed to understand the purpose of the hearing and their role as a member of the panel, and, therefore, should have disqualified themselves from the decision-making process. However, plaintiff's own attorney explained the panel's role in the matter before the hearings began and at closing argument. (N.T. 8/17/95 at 8-10; N.T. 9/28/95 92-112.) Plaintiff's attorney also never objected to the participation of these two members in the deliberations. Furthermore, two of the doctors credibly testified before this court that they understood their role in the hearings. (N.T. 2/28/96 at 48-49, 60-61.) Therefore, this court rejects plaintiff's argument and finds that the two members sufficiently understood the purpose of the hearings and their role in the hearings.

Plaintiff further argues that one member of the hearing panel, Dr. Stelzer, considered facts not in evidence in arriving at his decision which denied plaintiff a fair hearing. Again, this court would note that review of this issue is beyond its powers. It would also note that plaintiff did not object to this member's participation in deliberations even after it was made aware that the member had personal contacts with plaintiff. In fact, Dr. Stelzer offered to withdraw because of his personal contacts but plaintiff's attorney did not accept this offer. (N.T. 9/28/95 at 96-97.) Dr. Stelzer also credibly testified that he did not use any of his personal knowledge in the final decision of the hearing panel. (N.T. 2/28/96 at 49-50.) He also testified to the veracity of the summary of the hearing panel that states that the decision of the hearing panel "was based on review of the personnel file and testimony of the director of the residency program and two preceptors who had ongoing supervisory

roles in the training of Dr. Saad" and that plaintiff's own testimony was considered in their decision. (N.T. 2/28/96 at 49; exhibit D-1 summary of Residency Review Committee Hearing Panel). Therefore, plaintiff was not denied a fair hearing because Dr. Stelzer did not consider facts not in evidence.

Finally, plaintiff argues that he was denied a fair hearing because the hearing panel was not provided with an independent attorney to assist in legal matters. This argument is also without merit. Again, plaintiff did not object to the lack of legal counsel at the hearings. Furthermore, plaintiff's own attorney stated at the beginning of the hearings that "I don't think there will be any real legal issues for you to decide, it will be more a medical issue." (N.T. 8/17/95 at 10.) Finally, the Health Care Quality Improvement Act does not require that an independent attorney assist the panel at the hearings. Thus, plaintiff was not denied a fair hearing because of the absence of an independent attorney for the hearing panel.

For all of the reasons stated above, plaintiff was given a full and fair hearing, and defendant substantially complied with the procedures it had established, and, therefore, plaintiff received more than adequate due process before his final termination from defendant's program.

Plaintiff's final argument is that he is entitled to reinstatement and credit for two years of residency training because defendant breached its contract by dismissing him from the program without grounds. He relies on *Cooper, supra,* and *Zikria v. Western Pennsylvania Hospital,* 447 Pa. Super. 80, 668 A.2d 173 (1995) to support his proposition. However, plaintiff's reliance is mis-

placed. As stated before, *Cooper* stands for the proposition that courts may substantively review staffing decisions based on legitimate contract and tort theories where the plaintiff is seeking monetary damages. However, under that case, courts are still precluded from substantively reviewing staffing decisions where the plaintiff is seeking injunctive relief. The Superior Court in *Zikria* merely affirmed these principles and applied them to the case before it. The court held that the trial court did have the authority to review the substance of the staffing decision because the appellant had filed suit seeking monetary damages for an alleged breach of contract.

In the case at hand, plaintiff sought only equitable relief in his complaint. He did not seek monetary damages in his breach of contract counts, but only an injunction reinstating plaintiff into defendant's program. Therefore, because plaintiff did not allege a legitimate contract or tort theory, this court is precluded from reviewing the staffing decision at issue, and, thus, is precluded from ordering reinstatement or awarding credit in this case.

In conclusion, for all of the reasons stated above, it is hereby ordered that plaintiff's motion for post-trial relief is denied.

## ORDER

And now, March 7, 1997, after oral argument and consideration of the memoranda from counsel, it is hereby ordered and decreed that plaintiff's motion for post-trial relief is denied for the reasons set forth in the attached opinion.