836 A.2d 655

**Cynthia Denise SADLER**

v.

**DIMENSIONS HEALTHCARE CORP., et al.**

**No. 12, Sept. Term, 2002.**

Court of Appeals of Maryland.

Nov. 26, 2003.

510

512

Laurence S. Kaye (The Kaye Law Firm, on brief), Gaithersburg, for petitioner.

Phillip R. Zuber (Sasscer, Clagett & Bucher, on brief), Upper Marlboro, for respondents.

Argued before BELL, C.J., ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

RAKER, J.

Cynthia Denise Sadler, M.D., petitioner, was denied privileges to admit patients at Prince George's Hospital. Petitioner filed suit against respondents, parties to the denial decision,[1] alleging a series of counts, including breach of contract, several torts, and an action for declaratory judgment. The Circuit Court for Prince George's County granted summary judgment in respondents' favor. The Court of Special Appeals affirmed, *Sadler v. Dimensions Health*, 141 Md.App. 715, 787 A.2d 807 (2001), and we granted Sadler's petition for writ of certiorari. *Sadler v. Dimensions Health*, 369 Md. 179, 798 A.2d 551 (2002).

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. The named defendants which are party to the present appeal include: Dimensions Health Corporation; Allen E. Atzrott, the hospital's president; Stephen Werner, M.D., the president of the hospital's medical staff; Donald M. Goldman, the vice president of medical affairs at the hospital; and Shahnaz Quraishi, M.D., Raymond Cox, M.D., and Jeanette Ahkter, M.D., obstetricians on staff at the hospital.

In this action, we address the standard by which a circuit court should review, in the context of contract and tort claims, a decision of the Board of Directors of a privately owned hospital as to who should have staff privileges at the hospital. In this case, the trial court granted summary judgment on all counts in favor of respondents on the ground that the hospital's actions, taken in compliance with the hospital's bylaws, were supported by substantial evidence. We shall hold that the trial court, on a motion for summary judgment as to contract and tort claims, may not apply a "substantial evidence" standard akin to that applied during judicial review of the final action of an administrative agency. Rather, in accordance with Maryland Rule 2–501(e), a motion for summary judgment is appropriate only when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Accordingly, we shall reverse.

## I. *Background*

Petitioner, a licensed physician in the State of Maryland with a specialty in obstetrics and gynecology (OB/GYN), applied for privileges at Prince George's Health Center. The hospital is owned and operated by Dimensions Health Corporation, a non-profit corporation. The protracted relationship which ensued is described in detail in the opinion of the Court of Special Appeals as follows:

"In April, 1993, three incident reports concerning Dr. Sadler were filed. They involved her failure to respond to calls and initiate timely treatment, a broken humerus and permanent nerve injury following a birth, and a retained surgical sponge. The Patient Care Committee of the OB/ GYN Department ('PCC') reviewed the reports and concluded that continued observation of Dr. Sadler's 'pattern of practice' was warranted.

"When Dr. Sadler's application for medical staff privileges came before the hospital's credentials committee, action was deferred so that additional information could be obtained on her activities at Laurel Regional Hospital, where she previ-

ously had privileges. On July 8, 1993, the chairman of the credentials committee learned that Dr. Sadler was responsible for 28% of the quality assurance reviews at that hospital during her tenure there. Furthermore, he learned that when Dr. Sadler was informed by Laurel Regional Hospital that she was going to be monitored for a period of several months, she did not apply for reappointment to its medical staff.

"On November 1, 1993, Dr. Sadler was granted provisional privileges for two years at the hospital. Her provisional privileges were extended by the Board of Directors in November 1994.

"From September 1994 to July 1995, the PCC was referred sixteen of Dr. Sadler's cases, seven of which were found to involve significant opportunities for improvement and four involved breaches of the standard of care. On October 24, 1995, at the request of Dr. Cox and Dr. Quraishi, members of the OB–GYN department, Dr. Sadler met with the Director of Risk Management of the hospital and reviewed her entire medical staff credential file, including her incident reports. The PCC met with Dr. Sadler on November 13, 1995, to review five cases. Three involved non-indicated or precipitous cesarean sections and two involved delayed responses to calls from the hospital staff. Following that review, the PCC recommended that Dr. Sadler consult with more senior practitioners for second opinions before performing cesarean sections.

"Dr. Quraishi, who had become the chair of the OB/GYN department, refused to rate Dr. Sadler satisfactory on the provisional evaluation of her for the period from November 1994 until April 1995, because of fourteen multiple risk management reports, five involved substantial opportunities for improvement and one involved a breach of standard of care. On August 12, 1996, Dr. Quraishi in the provisional evaluation of Dr. Sadler's performance for the period from April 1995 to October 1995, rated it as unsatisfactory.

"On September 3, 1996, Dr. Quraishi, as chief of the OB/GYN department recommended to the credentials com-

mittee that Dr. Sadler's provisional status be extended for an additional six months and that her activities be 'closely monitored.' On October 22, 1996, the credentials committee recommended that Dr. Sadler's provisional status be extended for an additional six months with monitoring to be set by the Medical Executive Committee of the hospital ('MEC').

"On November 11, 1996, the PCC met to review several of Dr. Sadler's cases. That committee discussed the cerclage procedures performed by Dr. Sadler and recommended that an Ad Hoc Committee review that performance.

"The MEC, acting on the recommendation of the credentials committee, voted on November 12, 1996, to extend Dr. Sadler's provisional privileges for an additional six months due to 'repeated peer review and risk management issues.' An oversight committee for all departments of the medical staff also decided that day to recommend to the OB/GYN department that it retain the services of an outside consultant to review Dr. Sadler's patient care.

"On December 2, 1996, certain members of the OB/GYN department met with Dr. Sadler to discuss the incident reports on her, her professional behavior and other departmental issues. At that meeting, Dr. Sadler was provided copies of all the incident reports. In reply, Dr. Sadler claimed that staff members were 'out to get her' and questioned why she was being singled out. She also stated that there was a group of nurses who were against her.

"Harold Fox, M.D., Professor and Chief of OB/GYN at Johns Hopkins Hospital, and George R. Huggins, M.D., Associate Director of OB/GYN at Johns Hopkins Hospital and Director at Bayview Hospital, were retained by the OB/GYN department of the hospital on April 4, 1997, to review charts of a broad spectrum of OB/GYN cases of Dr. Sadler and random charts of other members of the OB/GYN department of the hospital. Following that review, they concluded that there was 'a significant opportunity for improvement in both documentation and patient management' by Dr. Sadler. They recommended in their report that Dr.

Sadler be subjected to case-by-case premonitoring for surgical indications. At an emergency meeting on April 25, 1997, the MEC considered the report of Drs. Fox and Huggins, the cerclage review findings, a chronology of events, and the recommendations of the PCC and the credentials committee. Based upon that review, all members of the MEC (seventeen present), with the exception of Dr. Frederick Corder, voted not to extend Dr. Sadler's provisional privileges beyond July 27, 1997, and until that time to impose monitoring and proctoring.

"Dr. Sadler was notified of the decision of the MEC on April 28, 1997, by a hand-delivered letter from Dr. David M. Goldman, the Vice President for Medical Affairs of the hospital. That letter also advised Dr. Sadler that since the action to terminate her privileges was an adverse action, she had a right to request a hearing pursuant to the provisions of the bylaws. Dr. Sadler exercised that right on May 10, 1997.

*Sadler*, 141 Md.App. at 719–722, 787 A.2d at 809–11.

Following the hospital's notification to petitioner of the MEC's decision to terminate her privileges, petitioner appealed, pursuant to the bylaws, to the Ad Hoc Committee.[2] Over the following year, the hearing committee convened on nine days, hearing testimony from a variety of witnesses. The witnesses included the individual respondents in the present case, as well as petitioner and a number of additional witnesses called by petitioner. Witnesses provided testimony and presented exhibits. All were subject to cross-examination by counsel for the hospital and petitioner.

On April 1, 1999, the hearing committee issued a thirty-page written report, providing a summation of the evidence presented, its findings with regard to the alleged actions of petitioner, and the appropriateness of the MEC's decision not

2. Sadler's request for a postponement of the hearing was granted and thus, the hearing, initially set to commence on June 24, 1997, began on November 12, 1997.

to extend petitioner's privileges. The committee recommended that the MEC's decision be upheld.

Petitioner exercised her right under the hospital bylaws for appellate review [3] by the Board of Directors. Following oral

---

**3.** The bylaws provide, in pertinent part, the following provisions concerning "appellate review" by the Board of Directors:

"The appellate review shall be conducted by the Board of Directors as a whole or by a duly appointed committee of the Board of Directors of not less than three (3) members. Knowledge of the matter involved shall not preclude any person from serving as a member of the appeal board, so long as that person did not take part in the prior hearing on the same matter. For the purposes of this section, participating in an initial decision to recommend adverse action, shall not be deemed to constitute participation in a prior hearing on the same matter.

"The affected practitioner shall have access to the report and record (and transcription, if any) of the ad hoc hearing committee and all other material, favorable or unfavorable, that was considered in making the adverse recommendation or decision against him. He shall have fifteen (15) days to submit a written statement on his own behalf, in which those factual and procedural matters with which he disagrees, and his reasons for such disagreement, shall be specified. This written statement may cover any matters raised at any step in the procedure to which the appeal is related, and legal counsel may assist in its preparation. Such written statement shall be submitted to the Board of Directors through the hospital president by certified mail, return receipt requested, within fifteen (15) days of the date that the affected practitioner files his request for appellate review. Thereafter, the Hospital shall have fifteen (15) days to file a response if so desired. In the case of an appellate review scheduled for a suspended practitioner as provided for in Section F.3. of this Article, the time frame outlined in this Paragraph will be waived and all applicable documentation will be presented at the appellate review proceedings.

"The Board of Directors or its appointed review committee shall act as an appellate body. It shall review the record created in the proceedings, and shall consider the written statements submitted for the purpose of determining whether the adverse recommendation or decision against the affected practitioner was justified and was not arbitrary or capricious. If oral arguments are requested as part of the appellate review procedure, the affected practitioner shall be present at such appellate review, shall be permitted to speak against the adverse recommendation or decision, and shall answer questions put to him by any member of the appellate review body. The Executive Committee or the Board of Directors, whichever is appropriate, shall also be represented by an individual who shall be permitted to speak in favor of the adverse recommendation or decision and who shall answer questions put to him by any member of the appellate review body."

argument, the Appellate Review Committee recommended that the Board affirm the decision of the MEC, and the Board followed that recommendation.

Subsequently, petitioner filed the present action in the Circuit Court for Prince George's County, alleging contract and tort claims. The defendants included the respondents, as well as Johns Hopkins University Hospital, Harold Fox, M.D., and George Huggins, M.D. Respondents filed motions for summary judgment, seeking dismissal for a variety of reasons including immunity under both state and federal law. Following a hearing on respondents' motions for summary judgment,[4] petitioner filed a second amended complaint, the subject of the present proceeding. The complaint includes charges of breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), tortious interference with prospective advantage (Counts IV and VI), tortious interference with contract (Count V), and civil conspiracy (Count VII). The amended complaint also included an action for declaratory judgment (Count VIII).

Prior to resolving respondents' motions for summary judgment, the Circuit Court held two hearings and requested the parties to "be prepared to address at the hearing the appropriate standard of review of the pending motions. The court notes that the parties have treated some issues under Rule 2–322, others under Rule 2–501 and yet others under administrative law analysis."

■ The Circuit Court first addressed the threshold issue of the appropriate standard of review applicable to a hospital credentialing decision. The court asked the parties to submit memoranda on the matter. In its written Opinion and Order of the Court, the court first observed that there was no Maryland case law "on the scope of judicial review of the administrative decision of a hospital acting in conformity with

---

4. Respondents filed a Motion to Dismiss in the Circuit Court under Rule 2–322. Because the court considered matters outside the pleadings, the court considered the motion as one for summary judgment. *See* Maryland Rule 2–322(c).

its by laws." Continuing down that path, the court noted that, "... this kind of administrative decision must be subject to some form of judicial review." Embracing the statutory framework set out in the Maryland Administrative Procedure Act, Maryland Code (1984, 1999 Repl.Vol., 2000 Supp.) § 10–222 of the State Government Article, for reviewing decisions of State administrative agencies, the court then concluded, that "the appropriate standard of review for the issues generated by the pending motions regarding the Hospital's decision is the *'substantial evidence* test.'" (Emphasis added). The court followed the rationale of out-of-state cases that have addressed the issue and that have likened the judicial review of the actions of private hospitals in the same way that courts review actions of state administrative agencies, and thus the court held that the "substantial evidence" test was the appropriate one. The trial court applied this standard in dismissing all counts of petitioner's amended complaint.

Sadler noted a timely appeal to the Court of Special Appeals. The Court of Special Appeals held that the trial court used the proper standard of review. We disagree.

## II.

Respondents argue that a hospital's credentialing decision should be given effect if supported by substantial evidence and made in conformity with the hospital bylaws. Respondents point to cases in our sister states that have held that court review of hospital credentialing decisions should be given "great deference," and reason that "[b]alancing both the physician's economic interests and the need for judicial alertness to unreasonable and unfair proceedings against a deference for the expertise of hospital authorities and the desirability of giving them latitude in making reasonable credentialing decisions has led some courts to adopt the substantial evidence test or its equivalent as the standard for limited judicial review." Following this line of argument, respondents then contend that a hospital credentialing decision, supported by substantial evidence, should preclude common law causes of

action if based on the same facts or issues decided against the physician.

Respondents ask us, in the context of a hospital's credentialing process, to modify the traditional standard for consideration of summary judgment motions. Where tort and contract claims challenge the conduct of a medical facility and its peer-review process, respondents contend that deference to those medical judgments is appropriate. The Court is asked to consider the present proceeding as one of "judicial review."

The concept of "judicial review" was first utilized in the credentialing context where physicians sought injunctions to prevent the enforcement of a hospital's decision. *See Levin v. Sinai Hosp. of Balto.*, 186 Md. 174, 179–80, 46 A.2d 298, 300–01 (1946) (finding physician had alleged no right to injunction against hospital which failed to reappoint him on the visiting staff); *Natale v. Sisters of Mercy of Council Bluffs*, 243 Iowa 582, 52 N.W.2d 701, 710 (Iowa 1952); *Berberian v. Lancaster Osteopathic Hosp. Assoc.*, 395 Pa. 257, 149 A.2d 456, 459–60 (1959); *Strauss v. Marlboro County Gen. Hosp.*, 185 S.C. 425, 194 S.E. 65, 65 (1937); *State ex rel. Wolf*, 181 Wis. 33, 193 N.W. 994, 996 (1923) (declaring mandamus would not lie against private hospital for denying privileges to physician). Physicians attempted to prevent the enforcement of credentialing decisions, arguing that they had been denied due process or fair hearings by the hospital. Such actions, not based on common law causes of action but rather on principles of equity, were disfavored by courts. *See Levin*, 186 Md. at 179–81, 46 A.2d at 301–03; *Ponca City Hosp., Inc. v. Murphree*, 545 P.2d 738, 741–42 (Okla.1976); *Straube v. Emanuel Lutheran Charity Bd.*, 287 Or. 375, 600 P.2d 381, 384 (1979); *Khoury v. Cmty. Mem'l Hosp., Inc.*, 203 Va. 236, 123 S.E.2d 533, 539 (1962). As one court explained:

"Several factors underlie our deference to the decisions of a hospital pertaining to staff privileges. . . . [M]ost hospitals have established procedures to make and review decisions affecting those privileges. The purpose of such a procedure is to provide, outside of the judicial system, a fair method for making decisions concerning staff privileges. A second

consideration is that hospitals are subject to extensive regulation, including regulations requiring the board of directors to appoint and oversee a qualified medical staff. Finally, governing a hospital requires expertise in both medical treatment and hospital administration. In so specialized and sensitive an activity as governing a hospital, courts are well advised to defer to those with the duty to govern. . . .

"Although they experience many of the problems of other corporations, hospitals differ in that they are vitally affected with a public interest and regularly function in a crisis atmosphere. Emergencies arise not only in emergency rooms, but throughout the hospital: in intensive care units, operating rooms, and patient rooms. In so intense a setting, flaring tempers, harsh words, and bruised feelings are to be expected. Nonetheless, if a hospital is to care for its patients, the staff, particularly doctors and nurses, must work together. As important as cooperation is to other corporations, it is even more critical in a modern hospital, where no single doctor cares for all the needs of any one patient. Hospital doctors depend on their colleagues, nurses, technicians, and other employees for total patient care. Just how to bring about the necessary cooperation among them is a matter best left to hospital authorities: the medical staff, hospital committees, and the governing body."

*Nanavati v. Burdette Tomlin Mem'l Hosp.*, 107 N.J. 240, 526 A.2d 697, 702–03 (1987) (citations omitted). In addition to public policy concerns, judicial action, it was argued, interferes with the business judgment of the hospital as a private entity. *See Natale*, 52 N.W.2d at 709–10; *Van Campen v. Olean Gen. Hosp.*, 210 A.D. 204, 205 N.Y.S. 554, 557–58 (N.Y.App.Div. 1924) (reversing injunction against hospital, "for courts have nothing to do with the internal management of corporations in the absence of fraud or bad faith, if kept within corporate powers" (citations omitted)), *aff'd* 239 N.Y. 615, 147 N.E. 219 (1925); *Khan v. Suburban Cmty. Hosp.*, 45 Ohio St.2d 39, 340 N.E.2d 398, 402 (1976) ("A court may not substitute its judgment for that of the hospital trustees' judgment."). On this basis, some courts declared, and continue to declare, that

a court is without jurisdiction to review the decision of a private hospital credentialing committee. *See Sarin v. Samaritan Health Ctr.*, 176 Mich.App. 790, 440 N.W.2d 80, 82–83 (1989); *Lakeside Cmty. Hosp., Inc. v. Levenson*, 101 Nev. 777, 710 P.2d 727, 728 (1985), *overruled by Meyer v. Sunrise Hosp.*, 117 Nev. 313, 22 P.3d 1142, 1148 n. 3 (2001); *Winston v. Am. Med. Int'l, Inc.*, 930 S.W.2d 945, 956 (Tex.App.1996).

This doctrine of non-review has been modified by several jurisdictions to allow for limited court inquiry to assure that the hospital has complied with its own established credentialing procedure. *See Clark v. Columbia/HCA Info. Servs. Inc.*, 117 Nev. 468, 25 P.3d 215, 220–21 (2001); *Straube*, 600 P.2d at 383–84; *Greisman v. Newcomb Hosp.*, 40 N.J. 389, 192 A.2d 817, 824–25 (1963) (recognizing a private cause of action to review exclusions from medical privileges because of the effect on physician's ability to practice and public interest in health care); *Mahmoodian v. United Hosp. Ctr.*, 185 W.Va. 59, 404 S.E.2d 750, 756 (1991) (citing cases). *But see Barrows v. Northwestern Mem'l Hosp.*, 123 Ill.2d 49, 121 Ill.Dec. 244, 525 N.E.2d 50, 52–53 (1988) (finding in 1988 that the "large majority of States continue to adhere to the rule of nonreview"). While recognizing the hospital's right to determine its own staffing needs, some courts review the complaints of terminated and adversely affected physicians to assure that they received a "fair hearing." *See Adkins v. Sarah Bush Lincoln Health Ctr.*, 129 Ill.2d 497, 136 Ill.Dec. 47, 544 N.E.2d 733, 739 (1989); *Nanavati*, 526 A.2d at 704; *Mahmoodian*, 404 S.E.2d at 756. Such review, viewed as the creation of a new cause of action, is limited in scope, generally amounting to verification that requirements of the hospital bylaws were substantially complied with. *See Shulman v. Washington Hosp. Ctr.*, 222 F.Supp. 59, 63 (D.D.C.1963); *Straube*, 600 P.2d at 385.

In such situations, the courts are split as to the appropriate standard of review. While some require a showing of "substantial evidence" that the hospital's actions were in accord with its adopted procedures, others seek to determine if the decision of the credentialing panel was "arbitrary and capri-

cious." Craig W. Dallon, *Understanding Judicial Review of Hospitals' Physician Credentialing and Peer Review Decisions,* 73 Temple L.Rev. 597, 676–77 (2000) (citing cases). Under either approach, courts applying such "judicial review" grant the physician's requested injunction only where the record of the hospital proceeding reveals a lack of basic procedural fairness. *See Mahmoodian,* 404 S.E.2d at 755–56. The courts undertaking such review are especially hesitant to question or undermine the medical evidence of the hospital, or to second-guess the credentialing personnel with regard to such specialized subject matter.

The justification for limited judicial review, that the private decision of the hospital is outside the court's jurisdiction and that the medical professional's expertise ought to preclude scrutiny by the court, amounts to public policy determinations of our sister courts. As stated, this limited review allows the court a role in granting injunctions against hospitals to prevent the implementation of credentialing decisions. Such suits, however, undermine the hospital's decision, allowing the affected physician to continue to practice medicine. Courts restrict their review of such cases, preferring that the hospital's decisions be upheld largely on public policy grounds.

The Supreme Court of Appeals of West Virginia summarized the limited review policy as follows:

"The judicial reluctance to review the medical staffing decisions of private hospitals, by way of injunction, declaratory judgment or otherwise, reflects the general unwillingness of courts to substitute their judgment on the merits for the professional judgment of medical and hospital officials with superior qualifications to make such decisions. Furthermore, a private hospital's actions do not constitute state action and, therefore, are not subject to scrutiny for compliance with procedural 'due process,' which is constitutionally required when there is state action. However, there are basic, common-law procedural protections which must be accorded a medical staff member by a private hospital in a disciplinary proceeding which could seriously affect his or her ability to practice medicine. Such basic procedural

protections include notice of the charges and a fair hearing before an impartial tribunal. If a private hospital's medical staff bylaws provide these basic procedural protections, and if the bylaws' procedures are followed substantially in the particular disciplinary proceeding, a court usually will not interfere with the medical peers' recommendation and the hospital's exercise of discretion on the merits."

*Mahmoodian,* 404 S.E.2d at 756 (citations omitted).

Like courts in our sister states, this Court has embraced the concept that internal hospital decisions should be subject to limited judicial review. In *Levin v. Sinai Hosp. of Balto.,* 186 Md. 174, 46 A.2d 298 (1946), we refused to grant the physician injunctive relief to overturn a credentialing decision of the hospital administration. *Id.* at 180, 46 A.2d at 301. The physician had asked for an injunction against the hospital, claiming that the hospital decision had been arbitrary and discriminatory. Having determined that the hospital was a private institution, we noted that "[i]t is a general rule that a court of equity will not interfere with the internal manage- ment of a corporation, unless the act complained of is fraudu- lent or *ultra vires.*" *Id.* at 179, 46 A.2d at 301 (citing *Williams v. Salisbury Ice Co.,* 176 Md. 13, 26, 3 A.2d 507, 513 (1939), and *Murray–Baumgartner Surgical Instr. Co. v. Re- quardt,* 180 Md. 245, 252, 23 A.2d 697, 699–700 (1942)).

The "business judgment rule," relied upon by the Court in *Levin* and codified at Maryland Code (1975, 1999 Repl.Vol., 2002 Supp.) § 2–405.1 of the Corporations and Associations Article, has been reiterated in a variety of contexts. *See, e.g., NAACP v. Golding,* 342 Md. 663, 672–73, 679 A.2d 554, 558–59 (1996) (applying rule to prevent judicial review of internal voting rules of a voluntary membership organization); *Toner v. Baltimore Envelope Co.,* 304 Md. 256, 261–62, 498 A.2d 642, 644–45 (1985) (referring to the rule in denying injunction against closely held corporation on behalf of minority holder of nonvoting stock requiring corporation to purchase nonvoting stock at specific price); *Devereux v. Berger,* 264 Md. 20, 31–32, 284 A.2d 605, 612 (1971) (noting that "[i]t is, of course, 'well established that courts generally will not interfere with the

internal management of a corporation' and that the 'conduct of the corporation's affairs are placed in the hands of the board of directors and if the majority of the board properly exercises its business judgment, the directors are not ordinarily liable' " (citing *Parish v. Maryland & Virginia Milk Producers Assn.*, 250 Md. 24, 74, 242 A.2d 512, 540 (1968))). Based upon the business judgment rule, in *Levin* we upheld the trial court's refusal to grant the injunction, and held: "a private hospital has the right to exclude any physician from practicing therein, and such exclusion rests within the sound discretion of the managing authorities." *Levin*, 186 Md. at 179–80, 46 A.2d at 301.

Cases such as *Levin*, seeking injunctions on due process and equity grounds, are in contrast to cases, like the one *sub judice*, alleging common law and statutory causes of action in contract and tort. Contract and tort actions have proliferated, in large part, because of the increasingly predominant view that the bylaws of a hospital constitute a contract between the hospital and the physician holding privileges.[5] In those jurisdictions where the bylaws are held to constitute an enforceable contract, a physician aggrieved by a credentialing decision may now bring a breach of contract action, as well as actions related to tortious interference. *See* Dallon, 73 Temple L.Rev. at 640–41 (citing cases).

Faced with these tort and contract cases, some courts have chosen to extend the deferential concept of judicial review, created to review hospital decisions in equity which sought injunctions, to all cases involving physician credentialing decisions. *See Spindle v. Sisters of Providence in Wash.*, 61 P.3d

---

5. The parties agree that the law in Maryland, as in the majority of states, recognizes that the bylaws are enforceable as a contract. *See Volcjak v. Wash. County Hospital*, 124 Md.App. 481, 495–96, 723 A.2d 463, 470–71 (1999); *Anne Arundel Gen. Hosp. v. O'Brien*, 49 Md.App. 362, 370, 432 A.2d 483, 488 (1981). *See also Berberian v. Lancaster Osteopathic Hosp. Ass'n*, 395 Pa. 257, 149 A.2d 456, 459 (1959); *Medical Ctr. Hosps. v. Terzis*, 235 Va. 443, 367 S.E.2d 728 (1988) Craig W. Dallon, *Understanding Judicial Review of Hospitals' Physician Credentialing and Peer Review Decisions*, 73 Temple L.Rev. 597, 639–43 (2000) (citing cases).

431, 436–37 (Alaska 2002); *Kiester v. Humana Hosp. Alaska, Inc.,* 843 P.2d 1219, 1223 (Alaska 1992); *Owens v. New Britain Gen. Hosp.,* 229 Conn. 592, 643 A.2d 233, 241 (1994); *Brinton v. IHC Hosps., Inc.,* 973 P.2d 956, 964 (Utah 1998). Thus, even where a case alleges only common law causes of action, sounding in contract and tort, many courts view the action as one of judicial review of the hospital's decision. *See Owens,* 643 A.2d at 241. Faced with a motion for summary judgment, those courts limit the inquiry to a review of the hospital proceedings. If the hospital's decision to limit or revoke privileges was made in substantial compliance with the hospital bylaws, those courts have granted summary judgment, citing the earlier cases which limited the court's power to grant injunctive relief, and declaring an aversion to "second-guessing" the decision of the medical personnel. *See id.* at 239–240 (citing *Gianetti v. Norwalk Hosp.,* 211 Conn. 51, 557 A.2d 1249, 1252–54 (1989)).

In seeking to provide such deference, these courts have treated the hospital's credentialing procedure as a "quasi-administrative" proceeding, and accorded its conclusions the same measure of deference normally given to the findings of a governmental administrative agency. The hospital, according to this argument, deserves such treatment because its credentialing process serves a public function similar to that of an agency which licenses a professional or entity to serve the public. *See Owens,* 643 A.2d at 241–42, 241 n. 27.[6]

■ The Maryland Administrative Procedure Act, Maryland Code (1984, 1999 Repl.Vol., 2000 Supp.) § 10–222 of the State Government Article, delineates the procedure for judi-

---

**6.** We note in the cases using an administrative agency standard of review a certain tension between the two justifications for deferring to a hospital's credentialing decisions. To the extent the court treats the decision as one of a private business, subject to the business judgment rule, it removes the hospital from the sphere of public decision-making. On the other hand, considering the determination to be one made by a "quasi-public" entity, acting in the public interest, the courts seem to be undermining the image of the hospital as a private business governed solely by its internal procedures and beholden to nothing but its own business judgment.

cial review of a decision of a State agency.[7] Generally judicial review of administrative agency action is narrow. *See Jordan v. Hebbville,* 369 Md. 439, 450, 800 A.2d 768, 774 (2002). The court's task on review is not to substitute its judgment for the expertise of the administrative agency. *Id.* (quoting *United Parcel v. People's Counsel,* 336 Md. 569, 576–77, 650 A.2d 226, 230 (1994)); *Board of Physicians v. Banks,* 354 Md. 59, 68–69, 729 A.2d 376, 381 (1999). In determining whether an administrative agency erred, the reviewing court must determine "(1) the legality of the decision and (2) whether there was substantial evidence from the record as a whole to support the decision." *Jordan,* 369 Md. at 450–51, 800 A.2d at 775 (quoting *Balto. Lutheran High Sch. v. Emp. Sec. Adm.,* 302 Md. 649, 662, 490 A.2d 701, 708 (1985)). "Substantial evidence" has

---

7. Section 10–222 provides, in pertinent part:

"(a) *Review of final decision.*—(1) Except as provided in subsection (b) of this section, a party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision as provided in this section. . . .

"(f) *Additional evidence before agency.*—(1) Judicial review of disputed issues of fact shall be confined to the record for judicial review supplemented by additional evidence taken pursuant to this section. . . .

"(g) *Proceeding.*—(1) The court shall conduct a proceeding under this section without a jury.

(2) A party may offer testimony on alleged irregularities in procedure before the presiding officer that do not appear on the record.

(3) On request, the court shall:

 (i) hear oral argument; and

 (ii) receive written briefs.

"(h) *Decision.*—In a proceeding under this section, the court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

 (i) is unconstitutional;

 (ii) exceeds the statutory authority or jurisdiction of the final decision maker;

 (iii) results from an unlawful procedure;

 (iv) is affected by any other error of law;

 (v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

 (vi) is arbitrary or capricious."

been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jordan,* 369 Md. at 451, 800 A.2d at 775 (quoting *Bulluck v. Pelham Woods Apts.,* 283 Md. 505, 512, 390 A.2d 1119, 1123 (1978)).

▮ Recently, in *Bell Atlantic v. Intercom,* 366 Md. 1, 782 A.2d 791 (2001), we reiterated the reasoning for such a deferential standard of review of agency action:

> "When faced with the responsibility of juxtaposing a statute which provides for judicial review of administrative agencies with the separation of powers doctrine as it is enshrined in the Maryland Constitution, it is clear that the analysis involves contrasting the relative role of the administrative agency process with that of the judiciary. We note initially that both the agencies and the courts are governmental ministries created to promote public purposes, and in this sense they are collaborative instrumentalities, rather than rivals or competitors, in the paramount task of safeguarding the interests of our citizens. However, the agencies and the courts each have their own, separate, constitutionally-erected fortress of power and responsibility in the relationship each has to the activities delegated by the Legislature to administrative agencies."

*Id.* at 21–22, 782 A.2d at 803 (quoting *Dep't of Nat. Res. v. Linchester Sand & Gravel,* 274 Md. 211, 221, 334 A.2d 514, 521–22 (1975)). Thus, judicial review of the actions of an administrative agency is restricted primarily because of the fundamental doctrine of separation of powers as set forth in Article 8 of the Declaration of Rights of the Maryland Constitution.[8] *Id.* at 21, 782 A.2d at 803.

The present case does not involve judicial review of an administrative agency decision. The hospital is a private

---

8. Article 8 of the Declaration of Rights of the Maryland Constitution states:

> "That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other."

entity, governed in the instance of credentialing decisions not by statute but by its bylaws. The Board of Directors are not officials appointed by the executive branch of government, and their actions are not the actions of the executive. Thus, the constitutional rationale to defer to the actions of an agency does not arise under the present circumstances.

This Court affirmed the independence of a private, non-profit, hospital in *Levin v. Sinai Hosp. of Balto.*, 186 Md. 174, 46 A.2d 298 (1946). In *Levin,* we considered a court action based on a hospital's credentialing decision. *Id.* at 177, 46 A.2d at 300. The physician brought suit against the hospital which had terminated his status as "visiting staff." His complaint alleged that the bylaws of the hospital were arbitrary and discriminatory, and that the hospital restrained trade in violation of the Sherman Anti–Trust Act, 15 U.S.C.A. §§ 1–3. *Id.* at 177–78, 46 A.2d at 300.

As a threshold issue, this Court considered whether the non-profit hospital was a public or private corporation. We defined a "public corporation" as "an instrumentality of the state, founded and owned by the state in the public interest, supported by public funds, and governed by managers deriving their authority from the state." *Id.* at 178, 46 A.2d at 300. We determined that the hospital, though operated solely for the benefit of the public and not for profit, was a *private* institution and, thus, that its decisions were to be treated as those of a private corporation. *Id.* at 179–80, 46 A.2d at 301. Several of our sister states, recognizing this distinction between private and public institutions, have likewise determined that a private non-profit hospital is not to be treated as a "public institution." *See Adkins v. Sarah Bush Lincoln Health Ctr.*, 129 Ill.2d 497, 136 Ill.Dec. 47, 544 N.E.2d 733, 739 (1989) (noting private hospital action is not state action, and therefore not subject to constitutional due process); *Owens v. New Britain Gen. Hosp.*, 229 Conn. 592, 643 A.2d 233, 239 n. 24 (1994) (same); *Bouquett v. St. Elizabeth Corp.*, 43 Ohio St.3d 50, 538 N.E.2d 113, 116 (1989) (same).

■ As stated previously, in *Levin* we affirmed the trial court's refusal to grant the physician injunctive relief to overturn a credentialing decision of the hospital administration. *Levin*, 186 Md. at 180, 46 A.2d at 301. The *Levin* Court did not, however, eliminate the possibility of a doctor bringing an action for damages in tort or contract. Instead, in that case, the Court found the hospital had complied with its bylaws, and reviewed the merits of the doctor's anti-trust claim, finding that he had not alleged any right to an injunction. *Id.* at 181–83, 46 A.2d at 302–03. The business judgment rule, which limits the court's role in reversing the actions of a corporation, has never precluded full litigation of complaints sounding in tort or contract against the corporation. A corporation, as a private entity, may be held liable for tortious conduct and breaches of contracts, perpetrated by its officers, directors, and agents, against third parties. *See* Maryland Code (1975, 1999 Repl.Vol., 2002 Supp.) § 2–103 of the Corporations and Associations Article.[9] Nothing in the jurisprudence of this State would hold otherwise.

Respondents, nonetheless, urge this Court to adopt a deferential attitude, in determining summary judgment, when reviewing hospital staffing decisions. In so asking, they request that we create an exception to a procedure utilized in this State for over fifty years. *See Nardo v. Favazza*, 206 Md. 122, 126, 110 A.2d 676, 678 (1955) (discussing the adoption of the original Summary Judgment Rules of the Court of Appeals on November 12, 1947); C. Christopher Brown, *Summary Judgment in Maryland*, 38 Md. L.Rev. 188, 189–93 (1978) (discussing the history of summary judgment in this State). Since 1947, this Court has noted that the standard for the entry of summary judgment is where "there is no genuine dispute as to

---

**9.** Section 2–103 states in pertinent part:

"Unless otherwise provided by law or its charter, a Maryland corporation has the general powers, whether or not they are set forth in its charter to: ...

(2) Sue, be sued, complain, and defend in all courts; ...

(5) Make contracts and guarantees, incur liabilities, and borrow money; ..."

any material fact and [the movant] is entitled to judgment as a matter of law." Md. Gen. R. Prac. & P., IV. Summary Judgment, rule 4(a), Maryland Code (Cum.Supp.1947) at 2044; Maryland Rule 610(d)(1) (enacted 1957); Maryland Rule 2–501(e) (enacted 1984).

The procedure for granting summary judgment in a civil case is dictated by Maryland Rule 2–501. The Rule states, in relevant part:

> "(e) **Entry of Judgment.** The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law."

This Court has discussed the application of this Rule, and appellate review thereof, on myriad occasions. *See Todd v. MTA,* 373 Md. 149, 154–55, 816 A.2d 930, 933 (2003); *Grimes v. Kennedy Krieger,* 366 Md. 29, 71–73, 782 A.2d 807, 833–34 (2001); *Goodwich v. Sinai Hosp. of Balto.,* 343 Md. 185, 204, 680 A.2d 1067, 1076 (1996); *Dobbins v. Washington Suburban,* 338 Md. 341, 344–45, 658 A.2d 675, 676–77 (1995); *Brewer v. Mele,* 267 Md. 437, 441–42, 298 A.2d 156, 159–60 (1972), *superseded on other grounds by Shoemaker v. Smith,* 353 Md. 143, 725 A.2d 549 (1999); *Whitcomb v. Horman,* 244 Md. 431, 437, 224 A.2d 120, 122–23 (1966); *Strickler Eng. Corp. v. Seminar,* 210 Md. 93, 99–100, 122 A.2d 563, 567 (1956).

"The standard of review for a grant of summary judgment is whether the trial court was legally correct." *Goodwich,* 343 Md. at 204, 680 A.2d at 1076.

> "In reviewing the grant of summary judgment, this Court must consider the facts reflected in the pleadings, depositions, answers to interrogatories and affidavits in the light most favorable to the non-moving parties, the plaintiffs. Even if it appears that the relevant facts are undisputed, 'if those facts are susceptible to inferences supporting the position of the party opposing summary judgment, then a grant of summary judgment is improper.' "

*Ashton v. Brown,* 339 Md. 70, 79, 660 A.2d 447, 452 (1995) (quoting *Clea v. Mayor & City of Baltimore,* 312 Md. 662, 677, 541 A.2d 1303, 1310 (1988)). This Court has noted that "the purpose of the summary judgment procedure is not to try the case or to decide the factual disputes, but to decide whether there is an issue of fact, which is sufficiently material to be tried." *Taylor v. NationsBank,* 365 Md. 166, 173, 776 A.2d 645, 650 (2001) (quoting *Jones v. Mid–Atlantic Funding,* 362 Md. 661, 675, 766 A.2d 617, 624 (2001)).

Summary judgment unquestionably is an important device, within our court system, for streamlining litigation and ensuring the application of limited judicial resources to potentially meritorious claims. Additionally, it saves the parties expense and the delays of protracted and non-meritorious litigation. Nonetheless, dismissal of the case deprives the parties of a trial and the opportunity to develop their claims and present them to a jury. This Court has therefore been careful to restrict application of summary judgment to cases that present no material facts that may reasonably be said to be disputed.

Respondents suggest that a credentialing decision warrants a unique divergence from this long established standard. Several decisions of this Court have considered similar credentialing proceedings without abridging the trial court's original jurisdiction.

In *Goodwich v. Sinai Hosp. of Balto., Inc.,* 343 Md. 185, 680 A.2d 1067 (1996), this Court reviewed the application of the Health Care Quality Improvement Act of 1986 (HCQIA), 42 U.S.C.S. §§ 11101–11152 (1994), to a peer review committee's decision to abridge a doctor's privileges. The physician brought suit against both the hospital and the committee, alleging civil conspiracy, denial of procedural due process, breach of contract, intentional interference with contractual relations, and tortious interference with prospective economic advantage. The trial court dismissed the conspiracy and due process claims, and subsequently granted the defendants' motion for summary judgment as to all remaining claims,

based on the immunity provisions of the HCQIA. The physician appealed the grant of summary judgment, arguing, among other things, that the trial court incorrectly had applied the standard for summary judgment. This Court reviewed Rule 2–501 and the case law interpreting it. *Id.* at 204–07, 680 A.2d at 1076–78. We concluded that, in light of the immunity provisions, the physician bore the burden of production in showing that the hospital was subject to suit. *Id.* at 207, 680 A.2d at 1078. We stated as follows:

> "In Maryland, when there is a genuine issue of material fact, the evidence, or the inferences deducible therefrom, is sufficient to permit the trier of fact to arrive at more than one conclusion; consequently, the moving party is not entitled to judgment as a matter of law. Because the applicable standard in civil cases is preponderance of the evidence, when the evidence the non-movant presents, or the inferences from that evidence, demonstrate that there is a genuine issue of material fact, it is at least arguable that he or she has met that burden. In other words, the generation of a genuine dispute of material fact is, in this context, the equivalent of meeting a preponderance of the evidence standard at trial. We thus conclude that the proper summary judgment standard in this case is whether Dr. Goodwich produced sufficient evidence of the existence of a genuine dispute as to the material fact of whether Sinai was entitled to the qualified immunity prescribed by the HCQIA."

*Id.*, 680 A.2d at 1078 (citations omitted).

In *Volcjak v. Wash. County Hospital,* 124 Md.App. 481, 723 A.2d 463 (1999), the Court of Special Appeals considered claims by a physician that, without a hearing, his clinical privileges had been terminated improperly by the hospital. The trial court had granted the hospital's motion for summary judgment on both breach of contract and tortious interference claims. The intermediate appellate court reversed the ruling as to one of the contract claims and affirmed as to the tort claims and other contract claim. The hospital argued that its staffing decision, as a "business decision," ought not be the

subject of review. Considering the standard of review, the court reiterated:

"Maryland Rule 2–501(e) provides that a court may grant a motion for summary judgment 'in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.' In considering a motion for summary judgment, the trial court does not determine any disputed facts, but instead rules on the motion as a matter of law. The court views the facts, including all inferences, in the light most favorable to the party against whom the court grants the judgment.

"In reviewing the trial court's decision, we must determine whether the trial court was legally correct in granting summary judgment, since a trial court decides issues of law, not fact, when granting summary judgment. We are therefore confined to the basis relied on by the trial court in our review."

*Id.* at 495, 723 A.2d at 470 (citations omitted). The Court of Special Appeals held that, under the normal summary judgment standard, the physician had made a sufficient showing to allege a breach of contract under the hospital bylaws. *Id.* at 508, 723 A.2d at 477. *See also Bender v. Suburban Hospital,* 134 Md.App. 7, 37–38, 758 A.2d 1090, 1106–07 (2000) (applying traditional standard of review, governed by Rule 2 501, to consider trial court's grant of summary judgment for hospital against physician's contract and tort claims).

Respondents argue that, without deference accorded to the hospital's decision, the court will be forced to reconsider and second-guess the medical judgment of the credentialing committee. We find this claim unconvincing in light of the State and Federal immunity statutes and the opinions of this Court interpreting their scope.

 Both Federal and State law seek to insulate from liability the people who make medical credentialing decisions. The Federal HCQIA and this State's Peer Review Immunity

Statute, Maryland Code (1974, 2002 Repl.Vol.) § 5–638 of the Maryland Courts and Judicial Proceedings Article, each grant limited immunity to participants in a hospital's credentialing procedure. The trial court, in the instant matter, dismissed several of petitioner's claims on the basis of such immunity, and those rulings are not the subject of the present appeal. On the other hand, although respondents challenged, in their motion f^r summary judgment, the claims at issue in the appeal before us on immunity grounds, the trial court does not appear to have dismissed the tort and contract claims on that basis. Petitioner asserts, and respondents do not contest before this Court,[10] that the tort and breach of contract claims lie outside the scope of state and federal immunity. Our decision in *Goodwich,* however, leads us to believe that the claims may well lie within either or both of the immunity provisions. 343 Md. at 214, 680 A.2d at 1081–82. *See also Bender,* 134 Md.App. at 50–51, 758 A.2d at 1113.

In *Goodwich,* this Court affirmed the trial court's dismissal of the physician's tort and contract claims, finding the claims to be within the scope of the State and Federal immunity statutes. *Goodwich,* 343 Md. at 214, 680 A.2d at 1081–82. The physician argued that, because he had asserted that the

---

**10.** As indicated, although respondents did not argue immunity before this Court, the defense was included in their motion for summary judgment. It is unclear whether the trial court considered the immunity defense, and the judge made no mention of it with regard to the claims at issue. "Ordinarily, an appellate court should review a grant of summary judgment only on the grounds relied upon by the trial court." *Blades v. Woods,* 338 Md. 475, 478, 659 A.2d 872, 873 (1995). We therefore decline to address the applicability of immunity to petitioner's tort and contract claims.

When the case is remanded, however, and the action reinstated, respondents will have the opportunity, should they choose, of renewing their motion for summary judgment alleging this or any other defense which may be asserted during the course of litigation. *See* Rule 2–501(a) ("Any party may file at any time a motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law."). Because the "denial of a motion for summary judgment is an interlocutory order . . . it is within the power of the trial court later to grant a renewal of a summary judgment motion." *Yamaner v. Orkin,* 313 Md. 508, 516, 545 A.2d 1345, 1349 (1988).

hospital did not act with reasonableness in furtherance of quality health care, and further, that a reviewing physician had acted in bad faith, his claims were outside immunity protections. We held that, under the federal immunity statute, the physician had the burden to produce "sufficient evidence of the existence of a genuine dispute as to the material fact of whether [the hospital] was entitled to the qualified immunity prescribed by the HCQIA." *Id.* at 207, 680 A.2d at 1078. Reviewing the evidence, we concluded that the physician's claims failed to meet such a burden, their allegations of bad faith and unreasonableness notwithstanding. Writing for this Court, Judge Bell, now Chief Judge, concluded:

"In this case, the record reflects that the restriction of Dr. Goodwich's privileges was limited to the activity prompting it, namely his repeated failure to comply with the second opinion requirement—a requirement he *voluntarily* consented to many times over a four-year period. In light of that noncompliance and the record of patient care-related issues raised with him over an extended period, the summary judgment record reflects clear evidence sufficient to establish that the hospital, conscious of the need to protect its patients, acted in an objectively reasonable fashion in restricting Dr. Goodwich's privileges.

"The evidence proffered by Dr. Goodwich, rather than rebutting the objective reasonableness of those actions, addressed preliminary and tangential matters, thus failing to demonstrate a genuine dispute of material fact as to that issue, the only one before the court. We hold, therefore, as did the Court of Special Appeals, that the trial court was legally correct in its grant of summary judgment."

*Id.* at 214, 680 A.2d at 1081.

In the present case, according to respondents:

"Dr. Sadler was afforded a full and fair opportunity to participate in an evidentiary hearing process to resolve whether the hospital credentialing actions recommended and imposed were appropriate. In this case, she renews the

same fight, dressed in contract and tort claims. The facts and issues, however, were decided adversely to her in a process that she agreed to."

Moreover, according to respondents, the credentialing decision reached was objectively reasonable, and made with the intent of protecting patients and promoting patient care. These facts, if alleged by respondents in a motion for summary judgment, should shift the burden of production to petitioner to demonstrate that the actions taken were not within the statutory immunity.

Where a hospital decision is made in conformity with its bylaws, and those bylaws are not illegal, the action of the hospital is entitled to the deference due any internal corporate decision. The court should not interfere with internal corporate decisions, nor prevent the officers and agents of the company from exercising their discretion in hiring and retaining personnel. Absent evidence of fraud or *ultra vires* activity, management of a corporation is the responsibility of the officers and directors, and not the proper subject of judicial scrutiny. Thus, where the hospital follows its bylaws in the credentialing decisions and there is no dispute to that material fact, the hospital may be entitled to summary judgment. If the hospital followed its bylaws during the credentialing proceedings, respondents may present that argument as a basis for summary judgment, and the trial court will apply the proper standard, *i.e.*, is there a legitimate dispute as to that fact. If petitioner's claims are as alleged by respondents, her claims are liable to meet with the same result as those of Dr. Goodwich.

Whether or not petitioner's tort and contract claims are determined to lie within the scope of State or Federal immunity, it is evident that where the Legislature has intended to protect the medical profession from liability for credentialing, it has done so through express legislation. *See* Maryland Code (1974, 2002 Repl.Vol.) § 5–638 of the Maryland Courts and Judicial Proceedings Article. We find no evidence of an intent on the part of the Legislature to limit the court's

traditional ability to consider such claims pursuant to the normal rules of civil procedure. We therefore reject the suggestion by the respondents that a private, non-profit hospital constitutes a "quasi-public" entity, or that it should be subject to the judicial review which we accord to a governmental administrative agency action. Credentialing decisions by a private hospital do not constitute public, administrative agency action. Thus, they are not subject to judicial review under the substantial evidence test.

The Supreme Court of Pennsylvania reached the same result in *Cooper v. Delaware Valley Med. Ctr.*, 539 Pa. 620, 654 A.2d 547 (1995). In *Cooper*, a physician brought suit against the hospital and members of the review panel which denied him privileges to treat certain patients. The complaint, alleging a variety of claims including tort and contract counts, was dismissed by the trial court on the defendants' motion for summary judgment. As a threshold matter, the Pennsylvania Supreme Court considered the level of review applicable to a private hospital's medical staffing rules and regulations, peer review and credentialing decisions. The court examined the competing interests at stake in such decisions:

> "Peer review can best be understood if one realizes that in most cases doctors with hospital privileges are not employees of the hospital[;] instead, they are independent contractors who must be granted permission to admit patients and make use of the hospital's resources. A physician receives permission to use the hospital when he [or she] receives a vote of approval from his [or her] colleagues. Peer review is the common method for exercising self regulatory competence and evaluating physicians for privileges. The purpose of this privilege system is to improve the quality of health care, and reflects a widespread belief that the medical profession is best qualified to police its own. Thus, it is beyond question that peer review committees play a critical role in the effort to maintain high professional standards in the medical practice.

"The goal of protecting patients and the general public from less than competent physicians is balanced against the rights of the private physician. The worst possible punishment for a physician is a 'denial of privileges based upon a physician's poor performance, inferior qualifications, or disruptive behavior.' Finding gainful employment in the hospital setting after a poor review is unlikely as a result of the provisions of the Health Care Quality Improvement Act of 1986, 42 U.S.C. §§ 11101–52 (1986), which requires that doctors who have been denied privileges be reported to a national service. Hospitals must check with this service that keeps track of inadequate and poorly qualified physicians before hiring a new doctor to assure that he [or she] has not been rejected by other health care facilities."

*Id.* at 551 (citations omitted).

The Pennsylvania court noted the deference sometimes accorded to credentialing decisions. The court found such deference applicable where the physician sought injunctive relief, in the form of asking the court simply to overturn the peer review committee's decision. *Id.* at 552. Where the physician sought damages under tort and contract theories, however, the *Cooper* court found the traditional summary judgment standard applicable.[11] *Id.* With regard to such

---

**11.** Although the Supreme Court of Pennsylvania is the only court to have made this distinction expressly, we note that several other states' decisions are in accord. *See, e.g., Shulman v. Washington Hosp. Ctr.,* 222 F.Supp. 59, 65 (D.D.C.1963) (refusing to review hospital's decision for purposes of requested injunction, yet considering merits of defamation count without deference to the hospital's decision); *Barrows v. Northwestern Mem'l Hosp.,* 123 Ill.2d 49, 121 Ill.Dec. 244, 525 N.E.2d 50, 55 (1988) (invoking rule of non-review to deny judicial review of hospital decisions, yet reserving judgment on sufficiency of antitrust, fraud, and conspiracy counts). Indeed, even *State ex rel. Wolf v. LaCrosse Lutheran Hospital Ass'n,* 181 Wis. 33, 193 N.W. 994 (1923), cited by several other courts as a formative case in the rule of nonreview, appears to distinguish actions for damages at law from equitable actions. *Id.* at 996. Finding judicial review of a private hospital's decision improper, the Wisconsin Supreme Court concluded:

"The power to manage the affairs of the corporation includes the power to exclude physicians from the privilege of practicing therein. If the exercise of this power constitutes a breach of contractual

claims, the court looked to the state and Federal immunity granted to peer review proceedings to provide hospitals and the reviewing physicians with sufficient protection from litigation. *Id.*

We find this reasoning persuasive. Moreover, it is consistent with the jurisprudence of this Court. *See Goodwich,* 343 Md. at 207, 680 A.2d at 1078 (applying no additional deference to summary judgment motion in tort and contract action); *Levin v. Sinai Hosp. of Balto.,* 186 Md. 174, 179–80, 46 A.2d 298, 301 (1946) (refusing to grant injunctive relief to reverse business judgment of hospital in absence of contract claims). *See also Bender v. Suburban Hospital,* 134 Md.App. 7, 37–38, 758 A.2d 1090, 1106–07 (2000); *Volcjak v. Wash. County Hospital,* 124 Md.App. 481, 495, 723 A.2d 463, 470 (1999).

 We have recognized, as have other courts, that if a private entity, including a hospital, through bylaws or otherwise, establishes either procedures in the nature of a grievance mechanism, to review adverse decisions affecting continued employment or affiliation, or substantive standards to govern those kinds of decisions, those procedures or standards *may,* under some circumstances, be regarded as contractual in nature. To the extent that they are so regarded and an allegation is made that they have been violated in some material way, an action for breach of contract may lie.

 Such an action is to be treated like any other breach of contract action. It is incumbent upon the plaintiff to show what the contract was and how it was violated. If there is no genuine dispute of material fact regarding the nature, existence, or relevant terms of the alleged contract and it is clear as a matter of law that the applicable procedures were followed, no breach has occurred and summary judgment is entirely permissible. It is not the court's role to second-guess

relations, the rights of the other party must be enforced in a proceeding to recover damages or to enforce specific performance. *Mandamus* will not lie."
*Id.*

the decision emanating from the hospital's grievance or review procedure, for that is not the focus of the action. The contract, if there is one, is not one of perpetual affiliation, but only the procedure and standards for terminating the affiliation. The hospital, as a private institution, has within its discretion the right to control its staffing procedures, and the court will not interfere with such business decisions. *See Levin*, 186 Md. at 179–80, 46 A.2d at 301. When considering, on the other hand, a hospital's motion for summary judgment in the context of the claims of a physician arising out of a credentialing decision, contract and tort claims should be dismissed upon a showing that there is no genuine dispute as to any material fact and that the defendant is entitled to judgment as a matter of law. If the gravamen of the action is the credentialing decision itself—not, for example, a published statement that may be unprivileged and defamatory—and a resolution of the complaint would require a judge or jury to determine whether, in their view, the decision was right or wrong or fair or unfair, the action simply will not lie.[12]

---

**12.** As an alternative argument, the respondents argue that the petitioner agreed, pursuant to the bylaws, to accept the decision of the Board of Directors as "final" and "conclusive." We provide the following analysis merely as guidance for the lower court on remand.

The scope of a judicial proceeding may be narrowed by the agreement of the parties and thus without an act of the Legislature. In the absence of procedural rules or statute, the parties themselves may, by agreement, limit the issues that a court will consider within a given dispute. Examples of such agreements include a proceeding on stipulated facts, the pre-trial entry of a consent order defining the issues for trial, or a more formal arbitration agreement under which the parties agree to limited judicial review of the arbitration determination.

Respondents allege that petitioner agreed to be bound by the credentialing procedure under the bylaws. Article VII, Section G of the bylaws, entitled "Final Decision by the Board of Directors," states in part: "[t]he decision of the Board of Directors of Prince George's Hospital Center, after Appeal, is conclusive." While the bylaws indicate that there are no further sources of appeal of such decisions within the hospital administration, the quoted language is far from conclusive in establishing a binding agreement not to pursue court action. By contrast, a binding arbitration agreement is generally clear and comprehensive in expressing the will of the parties to restrict their opportunity for judicial action. *See, e.g., Allstate Ins. Co. v. Stinebaugh*, 374 Md. 631, 637–38 n. 3, 824 A.2d 87, 91 n. 3 (2003); *Hartford v. Scarlett*

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENTS.*

WILNER and HARRELL, JJ., concur.

Concurring Opinion by WILNER, J.

I concur in the result because I agree that private hospitals are not governmental administrative agencies and, in considering common law breach of contract or tort actions based on hospital credentialing decisions, courts should not apply the test applicable to judicial review of agency decisions. The Court of Special Appeals, in my view, made two errors. First, because the parties conceded at trial that the administrative law test was applicable, the intermediate appellate court should have held any complaint about the use of that standard unpreserved for appellate review. The second error was the substantive one of adopting that standard. But for the fact that the Court of Special Appeals chose to reach the issue and apply that erroneous standard of review in a reported decision, this case would not even merit attention by this Court.

Unfortunately, in attempting to state the proper standard of judicial review, this Court has sown some confusion and has not given clear guidance to the trial courts in how to handle motions for summary judgment (or to dismiss for failure to state a claim upon which relief can be granted) in these kinds of cases. I believe that the standard was set in *Levin v. Sinai*

---

*Harbor,* 346 Md. 122, 124–25 n. 3, 695 A.2d 153, 154 n. 3 (1997). *But cf. Medical Ctr. Hosps. v. Terzis,* 235 Va. 443, 367 S.E.2d 728, 729 (1988) (finding provision of bylaws stating hospital board's decision not "subject to further hearing or appellate review" precluded the court's "judicial review" of the hospital's decision).

*Hosp. of Balto.*, 186 Md. 174, 46 A.2d 298 (1946)—a standard that has been adopted in other States and that works quite well. I would hold, without embellishment, that the appropriate standard to apply when a credentialing decision made by a private hospital is challenged, whether in an action for injunctive relief or in an action to recover money damages for breach of contract or tort, are those set forth in *Levin.*

In *Levin,* we established the basic principle that "a private hospital has the right to exclude any physician from practicing therein, and such exclusion rests within the sound discretion of the managing authorities." *Id.* at 179–80, 46 A.2d at 301. That principle is, of course, now subject to supervening civil rights laws that were not in effect when *Levin* was decided and that prohibit discrimination on the basis of race, religion, national origin, gender, age, or disability, the remedy for which is ordinarily committed by statute to Federal or State administrative agencies. Applying the normal "business judgment rule" that generally precludes judges and juries from second-guessing basic business decisions made by a private corporation and thereby interfering with the internal management of the corporation, we further held in *Levin* that it was not the policy of the State "to interfere with the power of the governing body of a private hospital to select its own medical staff." *Id.* at 180, 46 A.2d at 301. That principle, I believe, should apply consistently, whether the relief sought is an injunction to restrain the hospital from denying or terminating privileges, as in *Levin,* or damages for breach of contract or tort. The nature of the relief sought should not affect the underlying principle of judicial restraint.

We have recognized, and the Court seems to confirm today, that, if a private entity, including a hospital, through by-laws or otherwise, establishes either procedures in the nature of a grievance mechanism, to review adverse decisions affecting continued employment or affiliation, or substantive standards to govern those kinds of decisions, those procedures or standards *may,* under some circumstances, be regarded as contractual in nature. *See Suburban Hospital v. Dwiggins,* 324 Md. 294, 596 A.2d 1069 (1991). To the extent that they are so

regarded and an allegation is made that they have been violated in some material and prejudicial way, an action for breach of contract may lie.

As the Court notes, such an action should be treated like any other breach of contract action. It is incumbent upon the plaintiff to show what the contract was and how it was violated. If there is no genuine dispute of material fact regarding the nature, existence, or relevant terms of the alleged contract and it is clear as a matter of law that the applicable procedures and standards were followed, no breach has occurred and summary judgment or dismissal is permissible. It is not the court's role to second-guess the decision emanating from the hospital's grievance or review procedure, for that is not the focus of the action. The contract, if there is one, is not one of perpetual affiliation, but embraces only the procedure and standards for terminating the affiliation.

The Court seems to waffle with respect to tort actions, however. In my view, tort actions should also be governed by the principles enunciated in *Levin*. Courts are enjoined not to interfere with the internal management and basic business decisions of private corporations, and, as the West Virginia court so aptly stated in *Mahmoodian v. United Hosp. Ctr.*, 185 W.Va. 59, 404 S.Ed.2d 750 (1991), that includes decisions by private hospitals regarding their medical staff. Obviously, a decision to terminate privileges will interfere with the doctor's ability to treat patients at the hospital, and, if the decision becomes public, it may disparage the doctor's professional reputation. Those are simply consequences of the business and medical decisions made by the hospital, however, the same that may be suffered by any person whose employment or affiliation is terminated by an employer. Application of the normal business judgment rule in this context does not immunize the hospital or its officials from all tort liability, but it does preclude plaintiffs from circumventing the rule by dressing their complaints about the decision itself in the form of a tort action. If, under the standards set forth in *Levin*, the plaintiff would not be entitled, as a matter of substantive law, to injunctive relief to preclude the hospital from taking

the action in the first instance, the plaintiff should not be able to recover tort or contract damages based on the consequences of the action having been taken.

The rules set forth in *Levin* can and should be applied in a consistent manner. If the gravamen of the action is the credentialing decision itself—not, for example, published statements about it that may be unprivileged and defamatory—and a resolution of the complaint would require a judge or jury to determine whether, in their view, the decision was right or wrong or fair or unfair, the action simply will not lie. That should be the focus of the court in response to a motion for summary judgment.

The Court's opinion states some of these principles but then blurs them by scattering among them seemingly inconsistent statements, including diversions into Federal or State statutory immunity, which the Court acknowledges is not at issue in this appeal, and the Court's apparent embrace of *Cooper v. Delaware Valley Med. Ctr.*, 539 Pa. 620, 654 A.2d 547 (1995), which drew a distinction between actions for injunctive relief and actions for damages that the Court acknowledges no other court has made. This case calls out for clear guidance to the trial courts, and, regrettably, the guidance provided in the Court's opinion is anything but clear.

Judge HARRELL has authorized me to state that he joins in this Concurring Opinion.